698 December 22, 2016 No. 79

IN THE SUPREME COURT OF THE
STATE OF OREGON

Stacie PHILIBERT,
in her capacity as guardian *ad litem* for
Cameron Hollenbeck-Hatch and
Domanick Hollenbeck-Hatch,
*Petitioners on Review,*

*v.*

Dennis Dixon KLUSER,
*Respondent on Review.*

(CC 13CV01410, CA A156192, SC S063738)

On review from the Court of Appeals.*

Argued and submitted September 19, 2016.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for the petitioners on review. Also on the briefs was Tim Williams, Bend.

Flavio A. Ortiz, Lachenmeier Enloe Rall & Ortiz, Portland, argued the cause and filed the brief for the respondent on review. Also on the briefs was Martin M. Rall.

Cody Hoesly, Larkins Vacura LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and Rebecca A. Duncan, Judge of the Court of Appeals, Justice pro tempore.**

BALMER, C. J.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and this case is remanded to the circuit court for further proceedings.

_____

 * Appeal from Jefferson County Circuit Court, Gary Lee Williams, Judge. 274 Or App 195 (2015).

 ** Nakamoto, J., did not participate in the consideration or decision of this case.

**BALMER, C. J.**

This case requires us to consider the circumstances, if any, under which damages may be recovered by a bystander who suffers serious emotional distress as a result of observing the negligent physical injury of another person. Plaintiffs witnessed the death of a family member who was run over by a truck, but were not themselves physically injured.[1] They sought recovery for their emotional distress. The trial court dismissed the action and the Court of Appeals affirmed, both relying on the "impact rule." *Philibert v. Kluser*, 274 Or App 195, 361 P3d 610 (2015). The impact rule allows a plaintiff to seek damages for negligently caused emotional distress only if the plaintiff can show some physical impact to himself or herself, thus precluding the claims brought by plaintiffs in this case. For the reasons that follow, we conclude that plaintiffs should be able to pursue their claims notwithstanding the fact that they did not themselves suffer physical injury. We therefore reverse the decision of the Court of Appeals and the judgment of the circuit court, and remand the case to the trial court.

## I. FACTS AND PROCEEDINGS BELOW

Because plaintiffs appeal a judgment dismissing their complaint for failure to state a claim, ORCP 21 A(8), we take as true the facts alleged in the complaint. Plaintiffs are two brothers, aged eight and twelve, who were crossing a street in a crosswalk with the walk signal with their seven-year-old younger brother. Defendant negligently drove his pickup truck through the crosswalk, running over the youngest boy and narrowly missing the other two. The brother who was struck died at the scene. The two surviving brothers witnessed their brother's death and experienced serious emotional injuries as a result.

Plaintiffs filed this action against the driver, alleging negligence and seeking compensation for their emotional injuries. Their injuries include severe emotional distress, depression, post-traumatic stress disorder, aggression, and severe anxiety. Defendant moved to dismiss their complaint

---

[1] For the purposes of this opinion, "plaintiffs" refers to the two minors who are represented in this litigation by their guardian *ad litem*.

for failure to state a claim upon which relief could be granted, arguing that, as bystanders who had not been physically injured by defendant, they could not recover for their emotional distress. The trial court granted that motion, applying the "impact rule" announced in *Saechao v. Matsakoun*, 78 Or App 340, 717 P2d 165, *rev dismissed*, 302 Or 155 (1986), and plaintiffs appealed. The Court of Appeals affirmed the trial court's dismissal, also citing *Saechao. Philibert*, 274 Or App at 195.

In *Saechao*, the Court of Appeals confronted a situation factually similar to the present case. A driver negligently drove a car onto a sidewalk, killing one child, striking a sibling, and leaving two additional siblings untouched. *Saechao*, 78 Or App at 342-43. The three surviving children sued to recover for the emotional distress caused by witnessing their brother's death. *Id.* at 343. The court recognized the case as presenting a question of first impression of "when a person who witnesses the negligently caused injury or death of a member of the immediate family may recover damages for serious emotional distress resulting from witnessing the accident." *Id.* at 342. A divided, en banc court adopted the impact rule, "requiring that there be a direct accompanying [physical] injury to the person who suffers the emotional distress as a prerequisite to its compensability." *Id.* at 346. As a result, the child who was physically injured was permitted to seek emotional distress damages caused by witnessing his brother's death, but the claims by the two siblings who were not physically injured were dismissed. Judge Warren, writing for four judges, dissented. *Id.* at 348. The two children who were not injured, and thus had no claim, petitioned this court for review. We allowed review, but the case was settled and the petition for review dismissed. *Saechao*, 302 Or at 156. The Court of Appeals has continued to follow the impact rule in subsequent cases, as it did here. *See, e.g., Sherwood v. ODOT*, 170 Or App 66, 77-78, 11 P3d 664, *rev den*, 331 Or 692 (2000). We directly address the bystander recovery issue here for the first time.

## II.   ANALYSIS

Plaintiffs urge us to abandon the impact rule and adopt in its place a rule that allows them to recover damages

for their emotional distress without showing any physical harm to themselves. They suggest a "zone of danger" rule or a foreseeability-based rule. Although we agree that the impact test should not control bystander recovery, we do not adopt either of their suggested alternatives. Instead, for the reasons discussed below, we conclude that the rule articulated in the *Restatement (Third) of Torts* section 48 (2012) best promotes principled outcomes while avoiding the prospect of imposing potentially unlimited liability on defendants for the emotional distress that their negligence may cause. We begin our discussion by reviewing our existing case law regarding recovery of damages for negligent infliction of emotional distress and the role that foreseeability has in those claims. We then consider whether a claim for recovery of those damages in the circumstances presented here—where the plaintiff witnesses the negligently caused traumatic injury or death of a close family member—is consistent with our case law and should be recognized as a common law tort claim. Answering that question in the affirmative, we evaluate several tests for recovery in such circumstances that have been used by other courts, rejecting the impact rule adopted by the Court of Appeals in *Saechao* and plaintiffs' proposed zone of danger rule and adopting instead the test set out in section 48 of the *Restatement.* Finally, we apply the *Restatement* test to the facts of this case.

A.    *The* Norwest *Framework*

In *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-61, 652 P2d 318 (1982), we mapped the landscape of cases addressing claims for emotional distress damages and explained the framework that guides recovery for those injuries. Oregon allows plaintiffs to recover damages for emotional distress when they are physically injured, *see id.* at 558, and when the defendant acted intentionally, *id.* at 559 (citing *Hall v. The May Dept. Stores*, 292 Or 131, 637 P2d 126 (1981)). At issue here is a third basis recognized in *Norwest* for recovery of damages for emotional distress: when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest. *Norwest*, 293 Or at 559. The plaintiff's claim in that circumstance partially resembles a

common law negligence claim in that it rests on the concept of foreseeability. *Norwest* made clear, however, that the injury's foreseeability, standing alone, is insufficient to establish the defendant's liability: there must also be another "legal source" of liability for the plaintiff to recover emotional distress damages. *Norwest*, 293 Or at 569 (explaining that liability for emotional distress must have "a legal source besides its foreseeability"). Those two concepts identified in *Norwest*—foreseeability and the source of a legally protected interest—guide our analysis in this case.

Perhaps the simplest legally protected interest is that to be "free from physical harm at the hands of another."[2] *Gaston v. Parsons*, 318 Or 247, 255 n 8, 864 P2d 1319 (1994). In the context of that general interest to be free from physical harm, a defendant is liable to a plaintiff for damages resulting from the defendant's conduct that "unreasonably created a foreseeable risk * * * of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987); *see also Piazza v. Kellim*, 360 Or 58, 69-72, 377 P3d 492 (2016) (discussing elements of negligence claim). In addition to foreseeability's role in determining community standards for "blameworthiness" and liability, *Fazzolari*, 303 Or at 12, foreseeability is a pragmatic limit on liability for negligently caused *physical* harm because of the relative scarcity of physical injury, compared with emotional harm. *See id.* at 13 (identifying foreseeability as "a limit on the scope of liability").

In contrast to physical harms, emotional harms occur frequently. Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, 3 *Harper, James and Gray on Torts* § 18.4, 812 (3d ed 2007) ("The zone of psychic danger is more extensive than the zone of the foreseeable hazard of physical impact."). Any number of people may suffer emotional distress as the foreseeable result of a single negligent act. The *Restatement* provides an example: "a negligent airline that causes the death of a beloved celebrity can foresee genuine emotional harm to the celebrity's fans, but no court would

---

[2] Labeling freedom from physical harm as a legally protected interest for purposes of recovering emotional distress damages under the third category outlined in *Norwest* is simply a different way of stating the general rule that emotional distress damages are available to a plaintiff who is physically injured.

permit recovery for emotional harm under these circumstances." *Restatement* § 48 comment g. For that reason, foreseeability, standing alone, is not a useful limit on the scope of liability for emotional injuries. In *Harris v. Suniga*, 344 Or 301, 180 P3d 12 (2008), this court explained that allowing recovery for *economic* loss on the basis of foreseeability, without requiring more, would invite, in the words of Judge Cardozo, "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Id.* at 308 (quoting *Ultramares Corporation v. Touche*, 255 NY 170, 179, 174 NE 441, 444 (1931) (emphasis omitted)); *see also Ore-Ida Foods v. Indian Head*, 290 Or 909, 917, 627 P2d 469 (1981) (discussing "practically limitless" claims for consequential economic injury). Emotional distress, like economic loss, ripples throughout society as a foreseeable result of negligent conduct. Without some limiting principle in addition to foreseeability, permitting recovery for emotional injuries would create indeterminate and potentially unlimited liability.

As a result, if we were to recognize a legally protected interest against all negligently caused emotional harms, then foreseeability would no longer serve as an effective limit on liability. Nevertheless, even where a plaintiff has not been physically harmed, recovery for foreseeable emotional damages is available when the defendant's conduct "infringed some legally protected interest apart from causing the claimed distress[.]"[3] *Norwest*, 293 Or at 559. In the context of emotional distress, a legally protected interest is "'an independent basis of liability separate from the general duty to avoid foreseeable risk of harm.'" *Lockett v. Hill*, 182 Or App 377, 380, 51 P3d 5 (2002) (quoting *Phillips*

---

[3] Another way to compare negligence claims for physical and emotional injury is to contrast the extent of legal protection from physical harm with the extent of legal protection from emotional harm. A person's physical well-being is broadly protected: almost any kind of physical injury or even touching can be actionable. In contrast, a person's emotional well-being is not subject to general protection under the law. Courts and legislatures, however, have identified certain circumstances in which emotional well-being *is* legally protected. Examples include emotional harm resulting from invasion of privacy, *Hinish v. Meyer & Frank Co.*, 166 Or 482, 113 P2d 438 (1941), or disinterment of the body of a spouse, *Hovis v. City of Burns*, 243 Or 607, 415 P2d 29 (1966). As discussed, a plaintiff seeking to recover for negligent infliction of emotional distress must identify the invasion of an interest that is or should be legally protected, and must also allege the facts otherwise necessary to support a negligence claim. *See Norwest*, 293 Or at 569.

*v. Lincoln County School District*, 161 Or App 429, 433, 984 P2d 947 (1999)). The right to recovery for such injuries does not "arise from infringement of every kind of legally protected interest, but from only those that are 'of sufficient importance as a matter of public policy to merit protection from emotional impact.'" *Id.* (quoting *Hilt v. Bernstein*, 75 Or App 502, 515, 707 P2d 88 (1985), *rev den*, 300 Or 545 (1986)). For example, the invasion of a person's privacy will not always support a claim for emotional injury, because the nature and context of the invasion influences the extent to which privacy is legally protected and can be the basis for a successful emotional distress claim. *Compare Anderson v. Fisher Broadcasting Co.*, 300 Or 452, 712 P2d 803 (1986) (denying claim for emotional distress resulting from television station's use of image of plaintiff as stock footage in unrelated news story) *with Hinish v. Meyer & Frank Co.*, 166 Or 482, 506, 113 P2d 438 (1941) (allowing claim for emotional distress when plaintiff's name was signed without his consent on a telegram to the governor).

Among other circumstances, this court recognizes a plaintiff's legally protected interest when another party has a legal duty "designed to protect plaintiff[] against the type of harm which * * * occurred." *Nearing v. Weaver*, 295 Or 702, 708, 670 P2d 137 (1983). For example, in *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977), the court upheld a father's claim for emotional damages against a lawyer who delivered a passport to the mother that resulted in the mother leaving the country with the couple's child. The lawyer had violated a court order to keep the passport until the father had custody of the child. *Id.* at 784. The reviewing court concluded that when the judge issued that order, it was "foreseeable that [the mother] might * * * take [the child] with her back to Switzerland" and that "the primary purpose" of the order was to "protect plaintiff against the happening of that very danger." *Id.* at 788.

Similarly, in *Nearing*, the plaintiff stated a claim for recovery of emotional distress damages when she alleged that police officers violated a statutory duty to arrest her ex-spouse, who later threatened her. 295 Or at 707. The legally protected interest in that case was created by a statute designed to protect victims of domestic abuse. *Id.*

at 709 ("The widespread refusal or failure of police officers to remove persons involved in episodes of domestic violence was *** the main reason *** to require enforcement of restraining orders by mandatory arrest ***."). In other words, "the risk, the harm, and the potential plaintiff were all foreseen by the lawmaker." *Id.* at 708-09. In both *McEvoy* and *Nearing*, the plaintiff's successful claim for emotional distress damages rested on the defendant's violation of a legally protected interest, which in turn originated from a legal duty designed to protect the plaintiff from the type of emotional harm that occurred.

In addition to court order and statute, common law also can be the source of a legally protected interest capable of supporting a claim for recovery of emotional distress. *See, e.g.*, *Macca v. General Telephone Co. of N.W.*, 262 Or 414, 418, 495 P2d 1193 (1972) (allowing claim for emotional damages on the basis of infringement of right to be free from private nuisance); *Hovis v. City of Burns*, 243 Or 607, 613, 415 P2d 29 (1966) (allowing claim for emotional damages on the basis of infringement of right of a surviving spouse to have the remains of a deceased spouse undisturbed); *cf. MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 562, 383 P3d 800 (2016) (noting, in a different context, that "[a]s a general proposition, legal recognition can come from many sources—statutes, constitutional provisions, regulations, local ordinances, and the historical and evolving common law").

In contrast, this court has denied recovery to plaintiffs for emotional injuries resulting from a defendant's negligence when there is no independent legal source of liability. *See, e.g.*, *Norwest*, 293 Or at 568-69 (denying child's claim for "loss of his mother's society and companionship" because the defendant's liability "had no legal source besides its foreseeability"); *Hammond v. Central Lane Communications Center*, 312 Or 17, 24, 819 P2d 593 (1991) (denying recovery to wife who claimed emotional injury caused by watching husband die from heart attack while 9-1-1 system negligently delayed response because she had not "point[ed] to some legally protected interest of hers that defendants violated" (internal quotation omitted)); *Anderson*, 300 Or at 469 (denying recovery to plaintiff whose image was used in television

news story because he had not shown that "the manner or purpose of defendant's conduct [was] wrongful in some respect apart from causing the plaintiff's hurt feelings").

We now turn to the bystander's claim for negligently inflicted emotional distress. Plaintiffs assert the violation of two legally protected interests that they contend are sufficient to support their negligence claims: the right to avoid emotional injury caused by violations of traffic laws and the common law right of a bystander to avoid observing the physical injury of a close family member.[4] This court has not had occasion to previously consider such a "bystander claim." *Norwest*, 293 Or at 559 n 18 ("We have not had occasion to examine the bystander's claim for psychic injury from witnessing a negligent physical injury to a close relative * * *."). Our prior cases, however, have allowed claims for negligently inflicted emotional distress to proceed when the court has determined that an asserted common law interest is sufficiently important to support the imposition of liability. The negligent handling of a spouse's remains in *Hovis* and the particular invasion of privacy at issue in *Hinish* – an unauthorized telegram to the Governor falsely stating the plaintiff's support for particular legislation – are examples. In our view, the interest in avoiding being a witness to the negligently caused traumatic injury or death of a close family member is similarly important. Witnessing sudden physical injury or death is a palpable and distinct harm, different in kind even from the emotional distress that comes with the inevitable loss of our loved ones. Plaintiffs here watched as their younger brother was crushed by a pickup truck – a violation of their interest in not witnessing such a shocking and tragic event. And the resulting impact on them might be described as the emotional equivalent of a physical injury. As Prosser and Keeton observe, following *Dillon v. Legg*, 68 Cal 2d 728, 441 P2d 912 (1968) and similar cases, it is "obvious" and favored by "[a]ll ordinary human feelings" that the damages for emotional distress of a mother

---

[4] Because we conclude that plaintiffs have alleged a legally protected common law interest that is sufficient under *Norwest* to support their claim for emotional distress in these circumstances, we do not address their alternative argument that Oregon's traffic laws establish a "legally protected interest" on the part of persons who suffer emotional injury when another person violates those laws.

seeing her child injured should be recoverable in negligence. W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts* § 54, 366 (5th ed 1984). We have no difficulty concluding that plaintiffs have alleged the violation of a legally protected common law interest to be free from the kind of emotional distress injury caused by defendant's negligence here.

Our remaining task is to frame the contours of that interest and identify the elements that will allow a bystander to recover for the negligent infliction of emotional distress, while also providing a limiting principle that will avoid potentially unlimited claims or damages.[5] To do so, we consider three tests that courts commonly have used in similar cases: the impact test, the zone of danger test, and the *Restatement* approach.

B.   *The Impact Test*

The impact rule allows a plaintiff to recover for emotional distress when he or she also has suffered a physical injury. The Court of Appeals in *Saechao* applied that general rule to bystander cases, ruling that a bystander could not recover for emotional distress unless there is "direct accompanying [physical] injury to the person who suffers the emotional distress." 78 Or App at 346. Proponents of the impact rule claim that its merit lies in the bright line test for liability that it creates, *id.* at 348 (describing the impact test as providing a clear line and creating a "clear relationship between compensability and the plaintiff's being a victim of a breach of duty"); the clean question of proof that it presents, Keeton *et al*, *Prosser and Keeton on the Law of Torts* § 54, 364 (describing the impact test's "true value" as "the opportunity which is afforded to the defendant to testify that there was in fact no impact"); and as a "guarantee that the mental disturbance is genuine," *Wilson v. Tobiassen,* 97 Or App 527, 532, 777 P2d 1379, *rev den*, 308 Or 500 (1989) (internal quotation omitted).

---

[5] The *Restatement* notes that courts in states that allow recovery on the basis of foreseeability alone have had to resort to the "artificial manipulation of foreseeability" to avoid potentially "excessive and unworkable liability" for emotional distress claims. *Restatement* § 48 Reporters Note comment g (citing *Colbert v. Moomba Sports, Inc.,* 163 Wash 2d 43, 176 P3d 497 (2008) (illustrating strained application of foreseeability)).

The impact rule is problematic, however, because it sets a bar to recovery in bystander cases that can be both too high and too low. The bar is often too high because there is no principled reason to deny recovery for negligently caused emotional injury simply because the physical contact was with a third person rather than the plaintiff. *See Saechao*, 78 Or App at 349-50 (Warren, J., dissenting) ("Under the impact rule there is no causal, logical, or necessary relationship between the impact and the injury for which recovery is sought."). The facts of this case illustrate that point. Plaintiffs witnessed the traumatic death of their brother, but under the impact rule were denied recovery because the truck did not touch them. Yet, their distress at witnessing the death of their brother is likely unrelated to the coincidental fact that the truck did not hit them also. To deny recovery because a third person, rather than the plaintiffs, was physically injured—when even a minor physical impact is sufficient under that test—seems arbitrary and fails to protect plaintiffs' interest in avoiding witnessing the negligently caused death of their brother.

At the same time, the impact rule sets the bar too low in other circumstances, because a minor injury unrelated to the emotional distress satisfies the impact requirement and permits the claim to proceed. *See id.* at 343 (holding impact test satisfied by bruising). A review of the impact rule as applied across jurisdictions reveals that the required physical impact

> "often play[s] no part in causing the real harm, and in [itself has] no importance whatever. 'Impact' has meant a slight blow, a trifling burn or electric shock, a trivial jolt or jar, a forcible seating on the floor, dust in the eye, or the inhalation of smoke. The requirement has even been satisfied by a fall brought about by a faint after a collision, or the plaintiff's own wrenching of her shoulder in reaction to the fright. 'The magic formula 'impact' is pronounced; the door opens to full recovery.'"

Keeton *et al*, *Prosser and Keeton on the Law of Torts* § 54, 363-64 (internal citations omitted). In Oregon as well, the application of the impact rule has led to subtle distinctions. *Compare Simons v. Beard*, 188 Or App 370, 376-78, 379, 72 P3d 96 (2003) (allowing plaintiff to proceed with claim for

emotional distress arising from concern about her unborn child because the impact test was satisfied by her abnormal delivery) *with Chouinard v. Health Ventures*, 179 Or App 507, 514, 39 P3d 951 (2002) (denying plaintiff recovery for emotional distress because the presence of a tumor in her brain, without evidence that it grew during the relevant period, was insufficient "physical impact to permit plaintiff's claims *** to go to the jury").

The impact rule bars plaintiffs who have suffered genuine serious emotional distress from recovering and fails to treat like cases alike. In our view, those criticisms are persuasive. Moreover, at least some of the purposes the impact rule is supposed to serve—such as screening out fraudulent claims and assisting parties, juries, and courts by providing a bright-line rule—are fulfilled by various aspects of the *Restatement* rule, as discussed below. Other jurisdictions agree: the *Restatement* identifies Oregon as one of only four states that continue to apply the impact rule. *Restatement* § 48 Reporters Note comment a. Indeed, the impact test has been disfavored for decades. *See* Richard N. Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U Fla L Rev 477, 488 n 68 (1982) (identifying four states following the impact rule in 1982). We therefore reject the impact rule as the test for a bystander's recovery of emotional distress resulting from injury to another.

C.    *The Zone of Danger Test*

Plaintiffs suggest that we permit their recovery under the zone of danger test, which is used by some courts to allow recovery to a plaintiff who experiences "serious emotional distress due to witnessing a fatal injury to a third person only if the plaintiff was personally within the zone of danger of physical impact from the defendant's negligence." *Saechao*, 78 Or App at 346. Although the zone of danger test found some favor, *see, e.g., Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal 2d 295, 379 P2d 513 (1963) (adopting test), California notably abandoned the zone of danger test in *Dillon*, 68 Cal 2d at 728. In that case, a child's sister, standing close by, and her mother, standing down the block, observed a negligent driver kill the child. *Id.* at 731. The

court rejected the zone of danger rule and allowed both witnesses to proceed with their claims for emotional distress. *Id.* at 747-48. That court explained that rejecting the zone of danger test logically follows rejecting the impact test "because the only reason for the requirement of presence in that zone lies in the fact that one within it will fear the danger of *impact.*" *Id.* at 733 (emphasis in original). Neither test actually relates to the likelihood or severity of the emotional distress that can result from seeing a close family member suffer serious injury.

In practice, the zone of danger test results in unfairly denying recovery to plaintiffs who are located outside the zone of physical danger, but witness the physical injury to the third person just the same as if they had been in that zone, as the facts of *Dillon* demonstrate. *See Saechao*, 78 Or App at 348 ("[T]he zone of danger rule *** would not provide rational differentiations between those who may and those who may not recover."). We are persuaded by the reasoning of the California Supreme Court in *Dillon* and decline to adopt the zone of danger test.

D.   *The Restatement Rule*

A number of authorities have attempted to articulate a test for bystander recovery that avoids the somewhat arbitrary aspects of the impact and zone of danger tests, while limiting the potential for indeterminate and excessive liability for emotional distress claims that we discussed above. Probably the most thoughtful recent formulation is found in the *Restatement* section 48, which builds on *Dillon* and similar cases. Under that approach, a defendant "who negligently causes sudden serious bodily injury to a third person is subject to liability for serious emotional harm caused thereby to a person who (a) perceives the event contemporaneously, and (b) is a close family member of the person suffering the bodily injury." *Restatement* § 48 ("Negligent Infliction of Emotional Harm Resulting from Bodily Harm to a Third Person"). In our view, that test hews closely to the interest that should be legally protected—that is, the circumstances in which recovery for negligently caused emotional distress is favored by "[a]ll ordinary human feelings," Keeton *et al*, *Prosser and Keeton on the Law of Torts* § 54,

366 – while also recognizing necessary limits on potential liability and providing at least some guidance to courts and juries. Moreover, the *Restatement* test is generally consistent with this court's cases dealing with other aspects of claims for negligently caused serious emotional distress. We turn to a closer examination of the rule articulated in the *Restatement*.

The bystander recovery rule reflects a common understanding that the injury of another person creates a risk, that is reasonably likely to be realized, of causing a reasonable bystander to suffer serious emotional distress when certain factors are present. *Thing v. La Chusa*, 48 Cal 3d 644, 666, 771 P2d 814, 828 (1989) ("[I]n common experience, it is more likely that [persons closely related by blood or marriage] will suffer a greater degree of emotional distress than a disinterested witness to negligently caused pain and suffering or death."). In other words, the ability "to discriminate between stimuli that would induce serious psychic consequences in normally constituted people and those that would do so only in people already peculiarly vulnerable * * * turn[s] on the *severity* of the stimulus." Harper *et al*, *Harper, James & Gray on Torts* § 18.4, 812 (emphasis in original). The elements of the bystander recovery rule reflect the conditions that are likely to present a risk of serious emotional distress that is reasonably likely to be realized.[6]

The first element is that the bystander must witness a sudden, *serious physical injury* to a *third person* negligently *caused* by the defendant. *Restatement* § 48. *Hammond* presented a situation in which that element was not present. There, the plaintiff awoke to find her husband lying on the floor, apparently the victim of heart attack. 312 Or at 20. The plaintiff sought to recover for her severe emotional distress, alleging that if the defendant 9-1-1 service had arrived in the "couple of minutes" that the 9-1-1 operator predicted, rather than after the 45 minutes that actually

---

[6] Compare this approach with the impact rule, which looks only to whether the bystander suffered physical impact and not to the magnitude or significance of any injury. The zone of danger rule similarly falls short in identifying the aspects of a bystander experience that predict whether a reasonable person would react with serious emotional distress. *See* Harper *et al*, *Harper, James & Gray on Torts* § 18.4, 812 (so arguing).

elapsed, she would not have suffered emotional distress. *Id.* at 21. This court did not allow recovery. *Id.* at 28. Although the defendant may have contributed to the death by failing to respond quickly enough, the defendant did not cause the actual physical injury—the heart attack.

Second, the plaintiff must have suffered *serious* emotional distress. It is a truism that emotional distress is an unavoidable and essential part of life. The California Supreme Court explained that concept in the context of bystander emotional injury:

> "The emotional distress for which monetary damages may be recovered, however, ought not to be that form of acute emotional distress or the transient emotional reaction to the occasional gruesome or horrible accident to which every person may potentially be exposed in an industrial and sometimes violent society. *** The overwhelming majority of 'emotional distress' which we endure, therefore, is not compensable."

*Thing*, 48 Cal 3d at 666-67. For that reason, our cases allow compensation for only serious emotional distress. *See Hall*, 292 Or at 135 (noting that compensable emotional distress is not the "kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life"). A bystander who experiences emotional harm that does not rise to the level of serious emotional distress, therefore, cannot recover for that harm.

Third, in order to recover, the plaintiff must have perceived the events that caused injury to the third person as they occurred. *Restatement* § 48(a). This contemporaneous perception is at the core of the bystander's action for damages. Observation of the scene of an accident after it has happened, or perceiving a recently injured person, does not meet this requirement. *See id.* at comment e ("It is not enough that the person later learned about the events, later viewed a recording of them, or later observed the resulting bodily injuries."). This bright line rule is justified in part by the fact that the distressing life experience of learning about the death or injury of a loved one is unavoidable. Its inevitability means that "in a general way one is prepared" for it. *Ochoa v. Superior Court*, 39 Cal 3d 159, 165 n 6, 703 P2d 1, 5 n 6 (1985). In comparison, the visceral experience

of witnessing the sudden death or injury of a loved one by a negligent driver, as here, is *not* a certain part of life and therefore presents a stronger basis for allowing recovery against the tortfeasor.

The final element of the claim is that the physically injured person be a close family member of the plaintiff. *Restatement* § 48(b). Witnessing the injury of a stranger or acquaintance, while likely distressing, is not sufficient to recover. As we recognized three decades ago, however, formal legal relationships only imprecisely capture the reality of emotional connections in our society. *Norwest*, 293 Or at 561 (recognizing the "difficulties" with linking recovery to formal relationships "in a society whose practices and common assumptions about * * * relationships are rapidly changing"); *see also Leong v. Takasaki*, 55 Haw 398, 410, 520 P2d 758, 766 (1974) ("Neither should the absence of a blood relationship between victim and plaintiff-witness foreclose recovery."). The fraternal relationship of plaintiffs here to the person killed meets that requirement, but other cases may present closer questions as to the meaning of "close family member." *See Restatement* § 48 comment f ("[A] grandparent who lives in the household may have a different status from a cousin who does not.").

We recognize that the bystander recovery rule outlined in the *Restatement* may give rise to the possibility of false or inflated claims and that aspects of the rule may seem arbitrary. For as long as courts have awarded damages for emotional injuries, there have been concerns about plaintiffs bringing false claims. *See Fehely v. Senders*, 170 Or 457, 471, 135 P2d 283 (1943) ("[T]he danger that unscrupulous persons may impose on juries with fictitious claims * * * is a practical argument to which courts rightly give attention[.]"). Juries are charged with discerning truth from self-serving fiction when plaintiffs testify about their own injuries and are as competent to do this in claims for emotional injuries as they are in other cases. *Eisele v. Rood*, 275 Or 461, 467, 551 P2d 441 (1976) ("In cases in which plaintiff's evidence of injury is merely subjective in nature, the jury may choose to disbelieve plaintiff's testimony * * *."). Laws also may be structured to deter false claims by sympathetic plaintiffs whose charisma may evoke inconsistent and

unpredictable jury verdicts. *See Libbee v. Permanente Clinic*, 268 Or 258, 264, 518 P2d 636, *reh'g den*, 268 Or 273, 520 P2d 361 (1974) ("[I]f the common law has vitality it should be elastic enough to provide safeguards against fraudulent and speculative claims and to adapt itself to the facts of life in our modern society." (Citation omitted.)). The *Restatement* rule performs this function by including elements that, on the basis of human experience, are objective indicators of possibly serious emotional injury. *See Thing*, 48 Cal 3d at 666 (stating that "in common experience, it is more likely" that greater emotional distress will result when plaintiff observes contemporaneous injury to a closely related person). When the elements of the test are met, a plaintiff's claims of subjective emotional distress are more likely to be genuine.[7]

The *Restatement* rule may have the effect of permitting some claims that would be rejected under other tests, and vice-versa. In this area of the law in particular, some arbitrariness cannot be avoided. *See Saechao*, 78 Or App at 348 (Warren, J., dissenting) ("The fact that a decision is arbitrary in some respects does not mean that it cannot be principled."); *Thing*, 48 Cal 3d at 666 ("[A]rbitrary lines *** limit the class of potential plaintiffs if emotional injury absent physical harm is to continue to be a recoverable item of damages in a negligence action."); *Restatement* § 48 comment e ("There is an unavoidable arbitrariness to the line-drawing in this area."). But although the rule may be arbitrary in some circumstances, it "serve[s] a function and [is] neither random nor irrational." *Id.* at comment g. The undesirable arbitrary aspect of rules must be balanced

---

[7] Similarly, the bystander recovery rule also works to screen out claims by plaintiffs who react with serious emotional distress to common upsetting events of life that would not provoke that response in a reasonable person. *See Fehely v. Senders,* 170 Or 457, 475, 135 P2d 283 (1943) ("We adopt as a general rule which should govern in cases of this sort the following ***: 'The extent and duration of emotional distress produced by the tortious conduct depend upon the sensitiveness of the injured person. The court, however, will not permit consideration of disturbances which, conceding full weight to individuality, are wholly abnormal and unreasonable.'" (Quoting *Restatement (First) of Torts* § 905 comment i (1939).)). The factual conditions required for a plaintiff to recover provide an objective basis to believe that the serious emotional distress that the plaintiff alleges is genuine and a reaction that would be shared by a reasonable person in the same situation.

against the need to provide *ex ante* understanding of liability and assistance in the orderly administration of justice. *See Thing*, 48 Cal 3d at 664 ("We also weigh in the balance the importance to the administration of justice of clear guidelines under which litigants and trial courts may resolve disputes.").[8]

### III.   APPLICATION

We return to the facts of this case. Plaintiffs are two brothers who watched their third brother die as a result of being hit by defendant's negligently driven pickup truck. They allege emotional injuries, including depression and severe emotional distress. Examined in the light of the *Restatement* test set forth above, plaintiffs here state a negligence claim for recovery of emotional distress damage. The complaint alleges that plaintiffs' brother was killed as a result of defendant's negligence, that they saw the collision and watched their brother die, and that, as a result, they have suffered severe emotional distress. Based on those facts, plaintiffs' complaint states a claim for relief for bystander recovery under the *Restatement* test.

The decision of the Court of Appeals and the judgment of the Circuit Court are reversed, and this case is remanded to the Circuit Court for further proceedings.

---

[8] The *Restatement* notes that 29 states apply some version of section 48. *Restatement* § 48 Reporters Note comment a.