No. 2 January 19, 2018 337

IN THE SUPREME COURT OF THE
STATE OF OREGON

Lorraine BATES,
Charles Ehrman Bates, Eileen Burke,
Jaci Evans, as Successor Personal Representative
for the Estate of Thomas Marier, and
Dalla Francis, as Personal Representative for
the Estate of George Alexander,
*Plaintiffs,*

*v.*

BANKERS LIFE AND CASUALTY COMPANY,
an Illinois insurance company and
CNO Financial Group, INC.,
a Delaware corporation,
*Defendants.*

(US District Court No. 3:13-CV-00580-PK;
US Court of Appeals No. 14-35397; SC S064742)

On certified question from the United States Court of Appeals for the Ninth Circuit; certified order dated February 24, 2017; certified question accepted March 21, 2017; argued and submitted November 7, 2017.

Rachele R. Selvig, Cauble Cauble & Selvig, LLP, Grants Pass, argued the cause and filed the briefs for the plaintiffs.

Adam J. Kaiser, Alston & Bird LLP, New York, New York, argued the cause and filed the brief for the defendants. Also on the brief were John M. Aerni, New York, New York, and Vicki L. Smith, Lane Powell PC, Portland.

Erin K. Olson, Law Office of Erin Olson, PC, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Emily Teplin Fox, Portland.

Before Balmer, Chief Justice, and Kistler, Walters, Nakamoto, Flynn, and Duncan, Justices.*

_____

* Landau, J., retired December 31, 2017, and did not participate in the decision of this case. Nelson, J., did not participate in the consideration or decision of this case.

BALMER, C. J.

The certified question is answered.

**BALMER, C. J.**

This case is before the court on a certified question from the United States Court of Appeals for the Ninth Circuit under ORS 28.200 and ORAP 12.20. *See generally Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 811 P2d 627 (1991) (discussing factors court considers in exercising discretion to accept certified questions). The certified question relates to claims under ORS 124.110 for financial abuse of "vulnerable persons"—here, elderly persons—who purchased long-term care insurance from defendant Bankers Life & Casualty Co. (Bankers) and sought to receive insurance benefits under their policies.[1] The Ninth Circuit certified to this court, and we accepted, the following question:

> "Does a plaintiff state a claim under Oregon Revised Statutes 124.110(1)(b) for wrongful withholding of money or property where it is alleged that an insurance company has in bad faith delayed the processing of claims and refused to pay benefits owed under an insurance contract?"

*Bates v. Bankers Life & Cas. Co.*, 849 F3d 846, 847 (9th Cir 2017).

For the reasons that follow, we answer in the negative: Allegations that an insurance company, in bad faith, delayed the processing of claims and refused to pay benefits owed to vulnerable persons under an insurance contract do not state a claim under ORS 124.110(1)(b) for wrongful withholding of "money or property."[2]

We take the facts from the Ninth Circuit's certification order, supplemented by the federal court pleadings. The certification order states:

> "Plaintiffs are elderly Oregonians or their successors who purchased long-term healthcare insurance policies sold by [Bankers and its parent company]. These policies

---

[1] For convenience, we refer to plaintiffs' claim under ORS 124.110 as a claim for "elder financial abuse."

[2] It should go without saying that we express no opinion as to what other claims plaintiffs may or may not have against Bankers based on the allegations in this case. Plaintiffs asserted other claims in the federal court litigation, but none are before us, and our opinion is limited to the issue of whether plaintiffs have stated a claim under ORS 124.110(1)(b).

are designed to provide health services for elderly people who can no longer care for themselves and are intended to cover expenses for in-home care providers, assisted living facilities, and nursing homes.

"Plaintiffs allege that Bankers developed onerous procedures to delay and deny insurance claims. Examples of these procedures include failing to answer phone calls, losing documents, denying claims without notifying policyholders, denying claims for reasons that did not comport with Oregon law, and paying policyholders less than what they were owed under their policies. Bankers allegedly collected premium payments and, without good cause, delayed and denied insurance benefits to which Plaintiffs were entitled under their policies."

*Bates*, 849 F3d at 847.

The federal district court dismissed plaintiffs' elder financial abuse claim for failure to state a claim, concluding that Oregon's elder financial abuse statute applies only in the "bailment or trust scenarios expressly referenced in the statutory language." *Bates v. Bankers Life and Cas. Co.*, 993 F Supp 2d 1318, 1345 (D Or 2014). Plaintiffs appealed the judgment dismissing the elder financial abuse claim, and the Ninth Circuit, after briefing and argument, certified the question set out above.

Because the certified question asks us to consider whether plaintiffs have stated a claim under ORS 124.110 (1)(b), we accept as true the well-pleaded factual allegations in the complaint and construe them in the light most favorable to plaintiffs. *Philibert v. Kluser*, 360 Or 698, 700, 385 P3d 1038 (2016). Under that standard, we accept the factual assertions in the complaint, including plaintiffs' allegations that Bankers failed to act in good faith and intentionally adopted practices that would hinder policyholders in obtaining benefits to which they were contractually entitled. The issue before us, then, is the legal question whether Bankers' alleged conduct constitutes elder financial abuse under ORS 124.110(1)(b).

ORS 124.110 provides, in part:

"(1)   An action may be brought under ORS 124.100 for financial abuse in the following circumstances:

"*****

"(b)   When a vulnerable person requests that another person *transfer to the vulnerable person any money or property that the other person holds or controls* and that belongs to or is held in express trust, constructive trust or resulting trust for the vulnerable person, and the other person, without good cause, either *continues to hold the money or property or fails to take reasonable steps to make the money or property readily available* to the vulnerable person when:

"(A)   The *ownership or control of the money or property was acquired* in whole or in part by the other person or someone acting in concert with the other person *from the vulnerable person*; and

"(B)   The other person acts in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested or otherwise made available to the vulnerable person."

(Emphasis added.) The successful plaintiff in an elder financial abuse action can recover three times the plaintiff's economic and noneconomic damages, as well as attorney fees. ORS 124.100(2)(a) - (c).

Plaintiffs qualify as vulnerable persons under the statute. *See* ORS 124.100(1)(e) ("vulnerable person" includes an "elderly person"); ORS 124.100(1)(a) ("elderly person" means a person 65 years of age or older). They claim that in imposing various impediments to their efforts to collect insurance benefits due to them Bankers retained "money or property" that belonged to plaintiffs. Although plaintiffs articulate their claim in several slightly different ways, they essentially seek to bring themselves within the words of the elder financial abuse statute by arguing that the insurance benefits that Bankers was contractually obligated to pay them constituted "money or property" that "belong[ed] to" them. ORS 124.110(1)(b). As they assert, "[P]laintiffs are contractually entitled to the benefits under the long-term care policies; hence, that money belongs to them." When Bankers did not pay those benefits in a timely manner, they contend, Bankers (in the words of the statute) "without good cause, either continue[d] to hold the money or property or fail[ed] to take reasonable steps to make the money

or property readily available" to them. *Id*. Because Bankers "act[ed] in bad faith, or knew or should have known of the right of [plaintiffs] to have the money or property trans- ferred as requested or otherwise made available to [plain- tiffs]," ORS 124.110(1)(b)(B), plaintiffs conclude, Bankers engaged in elder financial abuse.[3]

Plaintiffs are straightforward in asserting that ORS 124.110(1)(b) provides a cause of action "against insur- ance companies that wrongfully retain benefits that belong to vulnerable shareholders." They argue that the federal district court erred in holding that claims under subsec- tion (1)(b) require that a vulnerable person allege that the other persons have "acquired" the money or property "from the vulnerable person" and then refused to return it, thus limiting such claims to trust and bailment relationships. They point out that the statute is not expressly limited to those kinds of relationships, but also covers money or prop- erty that "belongs to" the vulnerable person. Responding to Bankers' claim that plaintiffs' interpretation would allow an elder financial abuse action whenever an insurance company incorrectly denies an insurance claim, plaintiffs emphasize that bad faith is a critical element of a financial abuse action. This case, they state, is not about mere denials of insurance benefits, "but about a systemic bad faith scheme."

Bankers responds that ORS 124.110(1)(b) sim- ply does not apply to its insurer-insured relationship with plaintiffs. Bankers asserts that it does not "hold" or "control" any "money or property" owned by plaintiffs; rather, plain- tiffs purchased insurance from Bankers in exchange for the

---

[3] In addition to alleging failure to pay benefits, plaintiffs' complaint also con- tains allegations that Bankers improperly required policy holders to continue paying premiums—with Bankers sometimes continuing to receive automatic withdrawals from plaintiffs' bank accounts—even though the policies' "waiver" provision suspended premiums while policy holders or their spouses received ben- efits. The taking and improper withholding of *premiums* may present a different legal issue under ORS 124.110(1)(a) or (b)(B) than plaintiffs' central claim that Bankers violated that statute by failing to pay policy *benefits* to which they were contractually entitled. However, at oral argument, plaintiffs' counsel stated that plaintiffs were not making a claim regarding the wrongful retention of premium payments; in any event, that issue is not raised by the certified question, which focuses on whether Bankers "delayed the processing of claims and refused to pay benefits owed under [the] insurance contract[s]." Accordingly, we do not address those allegations.

payment of premiums. Those payments became Bankers' money, and, in return, plaintiffs received insurance policies. Bankers' obligation, it asserts, is to pay the benefits to which plaintiffs are entitled under the policy terms, but that does not make the amounts that Bankers is contractually obligated to pay "the money or property" of plaintiffs.

Bankers also points out that the statute specifically refers to circumstances in which a person holds a vulnerable person's money or property "in express trust, constructive trust or resulting trust," and argues that those examples indicate that the intent of ORS 124.110(1)(b) is not to authorize an elder financial abuse claim in connection with an ordinary arms-length consumer transaction, such as the purchase of insurance, but only when a person is holding money that it has "acquired" from and that "belongs to" the vulnerable person or is being held by the other person as a trustee or bailee on behalf of the vulnerable person.

Finally, Bankers argues that the use of the article "the" in the phrase "*the* money or property," which appears multiple times in the statute, makes clear that "*the* money or property" that the other person "continue[s] to hold" despite the request for its return by the vulnerable person (paragraph (1)(b); subparagraph (1)(b)(B)), is "*the* money or property" that the other person previously had acquired from the vulnerable person (subparagraph (1)(b)(A)). In other words, Bankers contends, the statute applies only when a vulnerable person seeks the return of the *same* money or property that he or she transferred to another person, which is not the circumstance in this case.

To resolve this interpretive dispute, we begin with the text of the statute. A careful reading of the financial abuse statute supports the interpretation urged by Bankers.

ORS 124.110(1) provides that an action may be brought for "financial abuse" in three different circumstances, only two of which have any relevance to the interpretive exercise here.[4] ORS 124.110(1)(*a*)—which is not the basis for plaintiffs' claim—allows a financial abuse action

---

[4] The third circumstance, set out in ORS 124.110(1)(c), is when a person violates a restraining order issued under ORS 124.020 regarding sweepstakes.

"[w]hen a person *wrongfully takes* or *appropriates* money or property of a vulnerable person." (Emphasis added.) That provision's use of the emphasized words indicates that it refers to the improper acquisition by another person of the vulnerable person's money or property—such as by fraud, conversion, or theft. *See [Hoffart v. Wiggins](#)*, 226 Or App 545, 548-49, 204 P3d 173 (2009) (noting that action under subsection (1)(a) requires that any taking must be "wrongful" and distinguishing action under subsection (1)(b), which does not require initial wrongful taking, but does require bad faith refusal to return money acquired from vulnerable person when requested).

Paragraph (1)(b), in contrast, applies to circumstances where the vulnerable person entrusts his or her money or property to the other person and later requests its return, but the other person in bad faith refuses to return it. Under that provision, an action for financial abuse requires proof of several elements. The first element in time (although it appears in the middle of the provision) is that "[t]he ownership or control of the money or property was acquired in whole or in part by the other person *** from the vulnerable person." ORS 124.110(1)(b)(A). That element does not require that there be wrongful conduct in the acquisition of the money or property, but it does require that the money or property at issue be acquired in whole or in part by the person from the vulnerable person. The second element is the vulnerable person's request to the other person that the other person "transfer" to the vulnerable person any money or property that "belongs to" the vulnerable person, and the third element is that the other person "without good cause" continue to hold the money or property that "belongs to" the vulnerable person. ORS 124.110(1)(b). The fourth element is that the other person have acted "in bad faith, or knew or should have known of the right of the vulnerable person to have the money or property transferred as requested." ORS 124.110(1)(b)(B).

Plaintiffs' argument that Bankers' failure to pay insurance benefits to them constitutes elder financial abuse runs into an initial, and fatal, textual barrier. Plaintiffs' position essentially reads out of the statute the first element of the claim—that Bankers have acquired "ownership

or control of the money or property from [plaintiffs]." If, as plaintiffs assert, "the money or property" is their contractual right to receive insurance benefits under the policies, Bankers did not "acquire[]" that contractual right "from" plaintiffs. Rather, plaintiffs paid insurance premiums to Bankers in exchange for insurance policies. Plaintiffs are not seeking the return of the money they transferred to Bankers in the form of premium payments, but instead the contractual benefits they are entitled to under Bankers' insurance policies, which are not the same thing. A "premium" is "[t]he amount paid at designated intervals for insurance; esp., the periodic payment required to keep an insurance policy in effect." *Blacks's Law Dictionary* 1371 (10th ed 2009). "Insurance" is "a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount of benefit upon determinable risk contingencies." ORS 731.102(1). Because "the money or property" that plaintiffs transferred to Bankers—premiums— is factually and legally different from the insurance policy benefits they now claim Bankers is withholding from them, plaintiffs are unable to establish the first element of their elder financial abuse claim, and that claim fails at the threshold. That, of course, was the basis for the federal district court's dismissal of plaintiffs' elder financial abuse claim. *Bates,* 993 F Supp 2d at 1344-45.

Before this court, plaintiffs elaborate on several arguments in support of their proposed interpretation of the elder financial abuse statute that the federal district addressed only summarily or not at all. We turn briefly to those contentions. Plaintiffs argue that Bankers "acquired" the money or property that "belong[ed] to" plaintiffs at the time that Bankers failed to pay (and thus "continue[d] to hold") the insurance benefits that were due to plaintiffs. But the statutory phrase "acquired *** from the vulnerable person" suggests a change in possession that is missing from plaintiffs' reading. Plaintiffs' interpretation would require "acquired" to mean something closer to "retained," a meaning that does not make sense in the context of a statute addressing intentional transfers of money or property such as trusts. Moreover, the statutory wording "continues to hold" confirms that the statute is focused on the wrongful

*retention* of money or property *already* owned by the vulnerable person, rather than the failure to pay an obligation owed to the vulnerable person, which is the gravamen of plaintiffs' allegations here.

Plaintiffs also argue that the federal district court incorrectly interpreted the elder financial abuse statute as applying only to money transferred by a vulnerable person to another person in "bailment or trust scenarios." *Bates*, 993 F Supp 2d at 1345. In doing so, they seek to expand the meaning of the words "money or property" that "belongs to" them (and that Bankers wrongfully failed to transfer to them) to include the insurance benefits to which they are contractually entitled.

Plaintiffs are correct that the words "money or property *** that belongs to *** the vulnerable person" indicate that ORS 124.110(1)(b) may apply outside the strict "trust" confines specifically identified in the statute and mentioned by the district court, but that does not mean that the statute applies here. We often apply the interpretive rule *noscitur a sociis* ("it is known by its associates"), *see* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012), to help us determine the meaning of a word or phrase by considering other words in the same sentence or provision. [*Goodwin v. Kingsmen Plastering, Inc.*](), 359 Or 694, 702, 375 P3d 463 (2016). The words "belongs to" are immediately followed in the statute by a more specific description of circumstances in which the subsection applies: "or is held in express trust, constructive trust or resulting trust for the vulnerable person." That context suggests that by including the words "belongs to" the legislature intended the statute to cover circumstances—in addition to an express, constructive, or resulting trust—where one person refuses pay money to a vulnerable person. But, contrary to plaintiffs' apparent view that the statute covers any wrongful failure to pay money owed to a vulnerable person, the statute only applies to money or property "that the other person holds or controls and that belongs to" the vulnerable person, and the trust examples help us understand that "belongs to" at least must be read to apply in trust-like situations—and not simply to any failure to pay a

contractual or other debt owed to a vulnerable person as a result of an arms-length consumer transaction.

That conclusion is reinforced by the statute's use of the article "the" in all but one of the references to "money or property." That usage indicates that the money or property at issue must be the money or property of the vulnerable person that the other person acquired as the first element of an elder financial abuse claim, described above—not money or property of the other person (here, Bankers) which that person may be obligated by contract to pay to the vulnerable person. Given the text and context, it is difficult to escape the conclusion that the legislature intended ORS 124.110 (1)(b) to apply only where the other person holds the *same* money or property that the other person acquired from the vulnerable person and that still "belongs to" the vulnerable person. As noted, the insurance benefits plainly are not the same "money or property" that Bankers acquired from plaintiffs. Depending on the policy terms and the individual circumstances of plaintiffs, they may have paid insurance premiums and yet be contractually entitled to no benefits at all—for example, if they never needed long-term care—or they may be entitled to benefits far in excess of the premiums they paid. That is the nature of insurance. Plaintiffs make no coherent legal argument that the legislature intended that the inchoate right to receive contractual benefits in certain circumstances—here, benefits under an insurance policy—is to be equated with "money" for purposes of ORS 124.110(1)(b). And while such a contract right might be considered "property" in the broadest sense of the word, what plaintiffs received in exchange for those premiums were insurance policies. Neither those policies, nor plaintiffs' contractual right to benefits under those policies, constituted "the money or property" that Bankers "acquired" from plaintiffs, and Bankers' failure to pay those benefits under the contract terms, even if wrongful, therefore was a not a violation of the elder financial abuse statute.[5]

_____

[5] In a different federal district court decision involving Oregon's elder financial abuse statute, the court rejected a claim involving an insurance policy on similar grounds:

"Plaintiff's claim is based on her payment of insurance premiums to State Farm and State Farm's alleged refusal to provide sufficient insurance coverage.

Plaintiffs also assert that their complaint states a claim under the elder financial abuse statute for the same reasons as the plaintiffs' claim in *Hoffart*. The Court of Appeals' analysis of the statute in that case is entirely consistent with our analysis here, but the facts in *Hoffart* contrast with those here and demonstrate why *Hoffart* does not support plaintiffs' claim.

In *Hoffart,* the Court of Appeals held that the plaintiffs had made out an elder financial abuse claim under ORS 124.110(1)(b) by alleging that they had entrusted money to defendants to invest on their behalf, that the defendants had agreed to return "the entire sum of money * * * to plaintiffs upon their request," and that the defendants in bad faith had refused to return the principal amount of the plaintiffs' investment. 226 Or App at 547-48.[6] *Hoffart* illustrates a situation where the defendants held and invested money that "belonged to" plaintiffs and had agreed to return that money on request. Here, however, plaintiffs paid insurance premiums to Bankers in exchange for insurance policies, which, as noted, are contracts to pay certain

These allegations do not assert a claim for wrongfully taken or appropriated property, as plaintiff paid those premiums in exchange for coverage under an insurance policy. Whether State Farm breached the terms of that policy is properly brought as a breach of contract rather an elder abuse claim."

*Yoakam v. State Farm Fire and Casualty Co.*, No 6:15-cv-00478-AA, 2017 WL 132845, at *2 (D Or Jan 11, 2017) (citations omitted). *Yoakam* apparently involved a claim under ORS 124.110(1)(a), rather than ORS 124.110(1)(b), see discussion above, 362 Or at 343-44, and thus is not directly relevant here, but its distinction between premiums paid for insurance and insurance policy benefits is consistent with the discussion in the text.

[6] As *Hoffart* implies, the other person's obligation to return the "money" that he or she acquired from the vulnerable person does not mean that the very same actual currency or other legal tender must be returned. Because money is fungible, the obligation can be met by returning the amount of money that the other person "holds or controls and that belongs to" the vulnerable person. Relatedly, *Hoffart* did not address, and we need not decide here, whether interest that may have accrued on money held on behalf of the vulnerable person also must be returned on request, along with the principal, even though the interest was not itself "acquired" by the other person from the vulnerable person under ORS 124.110(1)(b)(A). We note, however, that paragraph (1)(b) refers to the transfer, on request, to the vulnerable person of "*any* money or property the other person holds or controls" on behalf of the vulnerable person, and subparagraph (1)(b)(A) describes the money at issue as "the money or property [that] was acquired *in whole or in part* by the other person" from the vulnerable person, suggesting that the obligation to return money to the vulnerable person may include interest that accrued on the acquired money while it was held or controlled by the other person.

amounts of benefits "upon determinable risk contingencies." ORS 731.102(1). The money plaintiffs paid to Bankers as premiums became *Bankers'* money; it no longer "belonged to" plaintiffs. Bankers comingled that money with premiums paid by other insurance purchasers, spent some on operational expenses, and invested the rest; it continued to hold the remainder of the money, either as investment assets or in reserve funds to pay future claims. In return, plaintiffs received insurance policies that gave them contractual rights to insurance benefits.

In sum, plaintiffs' central argument appears to turn on their view that when their circumstances met the policy criteria and they became contractually entitled to insurance benefits under the policies that they had purchased from Bankers, that contractual right was "money or property" that belonged to them, and Bankers' failure, in bad faith, to transfer that money or property to them on request constituted elder financial abuse. Even if we were to accept that premise, plaintiffs cannot show that that same money or property had been "acquired" by Bankers from them, as plainly required by ORS 124.110(1)(b)(A).

Finally, we briefly address competing arguments raised by plaintiffs and Bankers based on other aspects of the financial abuse statute. Plaintiffs note that various categories of persons—such as financial institutions, adult foster homes, and health care facilities—have statutory immunity from civil elder financial abuse claims, and that insurance companies do not, ORS 124.115, suggesting that, for that reason, we should find that their complaint states a claim against Bankers. Bankers, on the other hand, argues at length that the comprehensive regulation of insurance companies, including those offering long-term care policies, demonstrates that the legislature did not intend disputes about benefits under long-term care insurance policies to be actionable under the elder financial abuse statute. Neither plaintiffs nor Bankers, however, identify any specific provision of the elder financial abuse statute or the insurance code that would affect the application of the statute to the allegations here or otherwise cause us to modify the statutory interpretation set out above. Those arguments may have force in other contexts, but because we conclude that

the allegations in this complaint do not state a claim for relief under ORS 124.110(1)(b), we have no occasion to consider them further in this opinion.

The certified question is answered.