**Blanche KALLSTROM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. S–9332.

Supreme Court of Alaska.

March 15, 2002.

Kristen D. Pettersen, Mauri Long, and Ray R. Brown, Dillon & Findley, Anchorage, for Appellant.

Kenneth S. Roosa, Assistant United States Attorney, and Robert C. Bundy, United States Attorney, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

We accepted certification in this case to decide whether a Negligent Infliction of Emotional Distress (NIED) cause of action exists under Alaska law for a plaintiff who becomes a participant in the infliction of another's injuries through the negligence of the defendant. Because we think that such an extension is inadvisable, we hold that an NIED claim is not available to such an "unwitting instrument."

## II. FACTS[1] AND PROCEEDINGS

On November 27, 1993, Blanche Kallstrom and other members of the public attended a

---

1. Because the federal court has presented us     with a generalized certified question and because

social function and dance at Jake's Place, an alcohol abuse transitional care facility in Dillingham. The lights at the facility had been dimmed for the dance. Non-alcoholic drinks were available to guests in the kitchen area adjacent to the dance floor. During the dance, Kallstrom went to the kitchen at the request of her young cousin to get a drink for nine-year-old Lori Dee Wilson. Kallstrom poured a drink from a pitcher sitting on the counter which she believed to contain fruit juice and gave it to Lori Dee. In fact, the pitcher contained a lye-based caustic detergent that caused severe, permanent internal injuries to Lori Dee when she drank it.

Kallstrom was not related to Lori Dee, but was friendly with Lori Dee and her mother and would see them every two to three months in Kallstrom's store. As a result of her mistake, Kallstrom claims that she sustained severe shock and emotional distress that has persisted in the months following the tragic incident.

Marilyn Wilson, Lori Dee's mother, on her own behalf and as guardian of Lori Dee, filed a complaint in federal court against the United States for negligence. Although Kallstrom was not named as a defendant by Wilson, the government brought a third-party complaint against her for negligence, seeking an allocation of fault. Kallstrom then filed a counterclaim against the government for her injuries allegedly caused by the government's negligence.

The federal district court granted summary judgment in favor of Lori Dee and against the government, concluding that it was negligent as a matter of law to allow an employee or resident of the facility to leave the caustic detergent in the pitcher near the sink. Wilson then settled her claim against the government and her claims were dismissed. The government dismissed its third-party claim against Kallstrom for an allocation of fault, leaving only Kallstrom's counterclaim against the government.

Kallstrom next moved for partial summary judgment against the government on her claim, and the government moved to dismiss Kallstrom's claim for failure to state a claim for relief for NIED under Alaska law. The district court granted the government's motion to dismiss and denied Kallstrom's motion for partial summary judgment.

Kallstrom then appealed to the Ninth Circuit Court of Appeals. The court of appeals certified this question to the Alaska Supreme Court pursuant to Rule 407(a) of the Alaska Rules of Appellate Procedure [2] because, as it noted, the facts of this case are not directly addressed by Alaska case law.[3] Specifically, the court of appeals asks:

> Whether a plaintiff, who has not suffered physical injury, may recover damages for the negligent infliction of emotional distress when the plaintiff, without any negligence on her part, becomes the unwitting instrument through which the defendant, because of its negligence, causes injury to an innocent victim.[4]

We agreed to accept certification and now answer the question certified to us.

## III. STANDARD OF REVIEW

■ A decision by this court to accept a certified question from another court under Appellate Rule 407(a) involves determinative questions of Alaska law for which there is no

our deliberations as to novel causes of action focus on legal duties between individuals rather than particular conduct, *see Bolieu v. Sisters of Providence in Wash.*, 953 P.2d 1233, 1235–36 (Alaska 1998) (quoting W. Page Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed.1984)), the immediate facts of this case are relevant only to the extent that they provide background information and illustration of the legal issue to be decided.

2. Rule 407(a) provides:
The supreme court may answer questions of law certified to it by the Supreme Court of the United States, a court of appeals of the United States, a United States district court, a United States bankruptcy court or United States bankruptcy appellate panel, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

3. *Wilson v. United States,* 190 F.3d 959, 962–63 (9th Cir.1999).

4. *Id.* at 960.

controlling precedent. Therefore, we exercise our independent judgment and select the rule of law that is most persuasive in light of precedent, reason, and policy.[5]

## IV. DISCUSSION

### A. Kallstrom Does Not Have a Claim for Emotional Distress under Established Alaska Law.

There are two causes of action under current Alaska law that may permit some unwitting instruments who do not suffer physical injury to recover for their emotional distress: Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress. However, neither one is available in Kallstrom's specific situation.

#### 1. Negligent Infliction of Emotional Distress

■ Persons in Alaska can recover for the emotional distress that they suffer under limited circumstances. Generally, damages are not awarded for NIED in the absence of physical injury.[6] However, there are two established exceptions to that rule in Alaska. The Ninth Circuit properly found that neither of the two established exceptions to the requirement of physical injury permits a claim for NIED by Kallstrom.[7]

##### a. The bystander exception

■ The first exception to the physical injury requirement involves those properly characterized as "bystanders" under the three-part test in *Dillon v. Legg*.[8] The test, which is used to determine whether the risk

of harm to the plaintiff was reasonably foreseeable, requires that: (1) the plaintiff is located near the scene of the accident, (2) the shock results from a direct emotional impact from the sensory and contemporaneous observance of the accident, and (3) a close relationship exists between plaintiff and victim.[9]

Alaska courts have taken a liberal approach in applying the *Dillon* factors.[10] In *Tommy's Elbow Room, Inc. v. Kavorkian*, we considered a NIED claim by a father who observed his severely injured daughter a few minutes after she had been hit by a drunk driver. Even though the father did not contemporaneously observe the accident itself, as required under a strict reading of the *Dillon* factors, we held that recovery was still available.[11]

But we have not yet taken a similarly liberal approach to the third requirement of a "close relationship." In Alaska, this relationship has always involved a blood relationship between plaintiff and victim.[12] Other states that have expanded the "close relationship" requirement have been very cautious to expand beyond a victim's immediate family, if they have done so at all.[13]

■ Even if Alaska's liberal interpretation of *Dillon* applied to the "close relationship" requirement, it would not encompass Kallstrom. She has no blood relation to the victim and had only passing involvement with the victim prior to the night of the injury, so such extension is unwarranted. Kallstrom cannot recover under the bystander theory.

---

5. *M.A. v. United States*, 951 P.2d 851, 853 (Alaska 1998); *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. *Hancock v. Northcutt*, 808 P.2d 251, 257 (Alaska 1991).

7. *Wilson*, 190 F.3d at 962.

8. 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912, 920 (1968). *See also Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038 (Alaska 1986) (adopting *Dillon* ).

9. *Dillon*, 69 Cal.Rptr. 72, 441 P.2d at 920.

10. *Kavorkian*, 727 P.2d at 1042–43.

11. *Id.*

12. *Wilson*, 190 F.3d at 962 (citations omitted).

13. *Compare Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 766 (1974) (extending claim to plaintiff who observed injury to stepgrandmother); *Dunphy v. Gregor*, 136 N.J. 99, 642 A.2d 372, 376–77 (1994) (extending claim to cohabitants of over two years who were engaged but not married); *with Elden v. Sheldon*, 46 Cal.3d 267, 250 Cal. Rptr. 254, 758 P.2d 582, 588 (1988) (refusing to extend claim to unmarried cohabitants); *Blanyar v. Pagnotti Enterprises, Inc.*, 451 Pa.Super. 269, 679 A.2d 790 (1996) (refusing to extend claim to "very close" cousin).

### b. The preexisting duty exception

■ The second exception to the requirement of physical injury arises when the defendant owes the plaintiff a preexisting duty, as recognized in *Chizmar v. Mackie*.[14] If such preexisting duty exists, then the potential emotional distress to the particular plaintiff is considered sufficiently foreseeable to permit recovery. A defendant must stand in either a fiduciary or contractual relationship with the plaintiff in order to create such a preexisting duty.[15]

■ The preexisting duty exception does not apply to Kallstrom either, since the relationship between her and the government was neither contractual nor fiduciary. Kallstrom could only claim that defendant owed her the same general duty of care owed to all other members of the public. Such a duty is not specific enough to meet the requirements of *Chizmar*.

### 2. Intentional Infliction of Emotional Distress (IIED)

■ Another cause of action is available to those who suffer emotional distress without accompanying physical injury—IIED. This cause of action differs from NIED in that the plaintiff must show that the defendant's actions leading to the complained of emotional distress were intentional, outrageous, or reckless and extreme.[16] It does not appear that Kallstrom has made such a claim in this case.

### B. We Decline To Extend a Claim for NIED to Unwitting Instruments.

■ The Ninth Circuit asks whether we would permit an unwitting instrument exception to the limitation on claims of NIED in the absence of physical injury. For the reasons discussed below, we decline to add such an exception.

### 1. This issue is not clearly resolved by existing precedent.

The government contends that we have given sufficient treatment to the policy considerations surrounding NIED claims and stated the law clearly in *Chizmar* and *M.A. v. United States*.[17] It argues that the two exceptions noted in those cases (bystander, preexisting duty) were intended to be the only such exceptions available for claims of NIED unaccompanied by physical injury, so the mere consideration of an additional exception in this case is excluded by well-established case law.

There are two reasons why we find that existing cases are not meant to cover the entire field and preclude further consideration. First, the government's argument relies on an absolute reading of the specific language of *Chizmar*, which the government reads as limiting recovery for NIED without physical injury only to those owed a preexisting duty. However, our decision in that case later recognizes that the requirement of. a preexisting duty is not absolute: "Our holding today does not modify the requirements for 'bystander' recovery." [18]

Second, the government's reading of *Chizmar* and *M.A.* is inconsistent with decisions subsequent to those cases. In two other cases, *Hawks v. State, Department of Public Safety*[19] and *Karen L. v. State, Department of Health & Social Services*,[20] we considered whether new factual situations merited imposition of a duty under NIED despite the fact that there was no preexisting duty between the parties. The government's own brief acknowledges that *Chizmar* has not rendered policy analysis irrelevant in new NIED cases, but only that it is of "limited applicability."

Although additional exceptions to the prohibition of claims for NIED in the absence of physical injury will not be easily established, we clarify that our decisions in *Chizmar* and

---

14. 896 P.2d 196, 203 (Alaska 1995).

15. *Id.*

16. *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 133 (Alaska 2000); *Wal–Mart, Inc. v. Stewart*, 990 P.2d 626, 635 (Alaska 1999).

17. 951 P.2d 851 (Alaska 1998).

18. *Chizmar*, 896 P.2d at 204.

19. 908 P.2d 1013 (Alaska 1995).

20. 953 P.2d 871 (Alaska 1998).

*M.A.* do not completely preclude consideration of such extensions in the future.

### 2. Plaintiffs in the "participant" or "unwitting instrument" scenario vary so widely that we decline to recognize an exception for them.

The bystander and preexisting duty exceptions permit recovery for NIED in the absence of physical injury because they "represent isolated situations where courts have found that the special circumstances surrounding a claim for emotional damages serve as a sufficient guarantee that the claim is neither false nor insubstantial."[21] We do not think that such certainty arises in the case of an unwitting instrument. Factual circumstances creating the participant or unwitting instrument scenario can vary so widely that such a characterization adds very little to the claim.

When deciding whether a novel action for negligence can be maintained under the common law, we consider whether a duty exists.[22] " 'Duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."[23] We apply the factors recognized in *D.S.W. v. Fairbanks North Star School District*[24] to determine whether an actionable duty of care exists when the facts under consideration are not covered by statute, regulation, contract, or case law.[25]

In the present case, Kallstrom proposes that we recognize a duty of due care to protect "unwitting instruments" from emotional harm. But such a duty would run afoul of *D.S.W.'s* first and most important factor, foreseeability of harm to the plaintiff.

We can imagine a potentially endless variety of factual circumstances that may give rise to an unwitting instrument claim: the friend who mails a defective toy to a child who later chokes on a small part of the toy, the owner who lends his car to a friend unaware that the car has faulty brakes, the cook whose customers develop a disease ten years after he served them food containing a carcinogenic preservative, and the driver who sues parents for negligent supervision after hitting a child who chases a ball into the street. Although all might be labeled "unwitting instruments," these scenarios vary widely with regard to the relevant considerations of duty, including foreseeability, certainty of injury, and ability to prevent future harm.

The cases cited by both parties also offer a variety of factual circumstances and legal outcomes that confirm our conclusion that unwitting instruments are a diverse group. In *Kately v. Wilkinson*,[26] a mother was allowed compensation for her claims of emotional distress resulting from witnessing the death of her daughter's friend as she waterskied behind the defective boat that the mother was driving. Similarly, in *Althoff v. Consolidated Rail Corp.*,[27] the court permitted a claim of emotional distress by the operator of a defective crane that dropped a wood timber and killed a bystander. However, in *Straub v. Fisher & Paykel Health*

---

**21.** *Chizmar,* 896 P.2d at 202 (quoting W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed.1984)).

**22.** *See Stephens v. State, Dep't of Revenue,* 746 P.2d 908, 910 (Alaska 1987).

**23.** *Mesiar v. Heckman,* 964 P.2d 445, 448 (Alaska 1998) (citations omitted).

**24.** 628 P.2d 554, 555 (Alaska 1981). The *D.S.W.* factors include the following:

    (1) the foreseeability of harm to the plaintiff;
    (2) the degree of certainty that the plaintiff suffered an injury;
    (3) the closeness of the connection between the defendant's conduct and the plaintiff's injury;

    (4) the moral blame attached to the defendant's conduct;
    (5) the policy of preventing further harm;
    (6) the extent of the burden to the defendant and consequences to the community of imposing a duty of care; and
    (7) the availability, cost, and prevalence of insurance for the risk involved.

**25.** *See Karen L. v. State, Dep't of Health & Soc. Servs.,* 953 P.2d 871, 875 n. 9 (Alaska 1998); *M.A. v. United States,* 951 P.2d 851 (Alaska 1998).

**26.** 148 Cal.App.3d 576, 195 Cal.Rptr. 902 (1984).

**27.** 1988 WL 61734 (E.D.Pa.1988).

*Care*,[28] the court denied a respiratory therapist's claims of emotional distress after witnessing a defective ventilator kill a patient. Other cases that we have found show a similar variance.[29]

The parties attempt to distinguish cases reaching opposing outcomes by claiming that they are based on alternate legal causes (product liability or employer's liability) or that related aspects of the ruling state's common law differs in some significant way. Regardless, these divergent opinions make clear that it cannot be said with regard to the unwitting instrument, as Professor Prosser has said with regard to the bystander exception, that "[a]ll ordinary human feelings are in favor of [an] action against the negligent defendant." [30]

Viewing these cases as a class of "unwitting instrument" situations, we find that the relationship between the plaintiff and the victim, the nature of the participant's involvement, and the uncertain mix of potential emotions, including guilt, shock or indifference, fall well short of creating the same "compelling proposition" that led the court in *Dillon* to allow recovery for a mother who witnesses the infliction of death or injury to her child.[31]

In particular, an unwitting instrument might be expected to feel very different depending on the nature of the person's instrumentality. For example, one instrument may be the exclusive cause of injury while another may be only a contributing or partial cause. Even more important is the type of action giving rise to an unwitting instrument; one unwitting instrument may exercise discretion or choice of action in the role as instrument while another's involvement may be completely involuntary and unthinking. Each difference will contribute in important ways to the plaintiff's feelings of guilt and will control the emotional distress.

Our existing exceptions to the NIED rule's requirement of physical injury define combinations of factors that we consider to be useful and reliable in identifying claims involving foreseeable danger of serious emotional harm—factors such as physical or temporal proximity of the plaintiff to the infliction of the victim's injury and the relationship between the participant and the victim. But we do not think that the broad range of situations encompassed by the term "unwitting instrument" would be useful in the same way.

Kallstrom's case is compelling because she comes close to so many of the relevant factors for establishing NIED in the absence of physical injury. However, she fails to plead an existing cause of action because her personal relationship to Lori Dee is not close enough and the government owed her no preexisting duty. Yet even assuming that the other requirements of the bystander exception remained, we would decline to accept unwitting instrument status—that is, mere innocent presence in the causal chain—as a substitute for the existing requirement of close personal relationship. Such a factor is so variable that it does not meaningfully distinguish between claims that should be allowed and those that should not.

## V. CONCLUSION

We hold that a claim of NIED in the absence of physical injury is not available to a plaintiff solely because she or he is made the unwitting instrument of death or serious injury to another through the negligence of the defendant.

---

**28.** 990 P.2d 384 (Utah 1999).

**29.** *Compare Crippens v. Sav On Drug Stores*, 114 Nev. 760, 961 P.2d 761 (1998) (permitting claim by daughter who administered negligently dispensed drugs to her mother), *with Slaton v. Vansickle*, 872 P.2d 929 (Okla.1994) (rejecting claim by gun owner whose gun misfired while he was cleaning it and killed young girl).

**30.** W. Page Keeton, et al., Prosser and Keeton on the Law of Torts § 54, at 366 (5th ed.1984).

**31.** *Dillon*, 69 Cal.Rptr. 72, 441 P.2d at 914.