*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RACHEL E. SCHACK and DYLAN E. SCHACK, | ) ) | Supreme Court No. S-16438 |
| | ) | |
| Appellants, | ) | Superior Court No. 4FA-14-00718 PR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STEVEN M. SCHACK, Personal Representative of the Estate of ELIZABETH I. SCHACK, | ) ) ) | No. 7230 – March 23, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Matthew C. Christian, Judge pro tem.

Appearances: Ward Merdes, Merdes Law Office, P.C., Fairbanks, for Appellants. Cheryl L. Graves, Farley & Graves, P.C., Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I.      INTRODUCTION

A family rushed to the scene of a car accident, only to discover that it had been caused by a family member, who soon died from her traumatic injuries. The family

brought a bystander claim against the deceased family member's estate for negligent infliction of emotional distress, making the novel argument that, even though the family member was also the tortfeasor, the family could recover for its resulting emotional distress. The superior court granted summary judgment in favor of the estate, reasoning that the family's claim has no basis in current Alaska law. We affirm the superior court's grant of summary judgment because the family's claim has no basis in current Alaska law and fails to satisfy our test for expanding tort liability.

## II.    FACTS AND PROCEEDINGS

The parties stipulated to the following facts for the purposes of summary judgment, and, in this appeal, we assume they are true. In June 2014, Elizabeth Schack was driving and failed to yield the right-of-way at a stop sign. The driver of an oncoming truck was unable to stop and collided with the driver's side of Elizabeth's car. Elizabeth's mother and brother, Rachel and Dylan Schack, at home around the corner, heard the impact and rushed to the scene, where they saw Elizabeth seriously injured as a result of the crash. As the Schacks watched, Elizabeth was extracted from the vehicle by emergency responders; she died as a result of her injuries.

In February 2015, the Schacks filed a notice of negligent infliction of emotional distress (NIED) claim[1] against Elizabeth's estate[2] (the Estate). The notice

---

[1]    Under AS 13.16.465 a claim against a decedent's estate must be presented as a written statement providing the basis of the claim and other information rather than as a complaint.

[2]    The parties dispute whether Elizabeth's insurance company is also a party to this suit. However, the presence of insurance has no bearing on the legal question whether an NIED claim can proceed when the tortfeasor and the victim are the same person, so we do not address this issue further. *See Severson v. Estate of Severson*, 627 P.2d 649, 651 (Alaska 1981) (noting that Alaska law does not permit direct actions against an alleged tortfeasor's liability insurer).

asserted the Estate was liable for the emotional distress that the Schacks experienced as a result of Elizabeth's negligent conduct. Each family member sought as compensation the liability limit of Elizabeth's auto insurance policy and the liability limit of the Estate's personal representative's auto insurance policy. The Estate filed a notice of disallowance of the NIED claim on the basis that it was of questionable legal validity.[3]

The Schacks then petitioned for allowance of the NIED claim, and the Estate moved for summary judgment. The Estate contended that the NIED claim failed as a matter of law because Alaska's bystander theory of liability does not permit recovery when the tortfeasor and the injured relative are the same person. The Schacks opposed the motion and cross-moved to establish NIED liability by the Estate as a matter of law. They argued that no case law dictated that Elizabeth's dual role precluded recovery under an NIED claim. In August 2016, after hearing argument from both parties, the superior court granted the Estate's motion for summary judgment and denied the Schacks' cross-motion, reasoning that the NIED claim has no basis in current Alaska law. The Schacks appeal.

## III.  STANDARD OF REVIEW

"We review grants of summary judgment de novo, determining whether the record presents any genuine issues of material fact."[4] "If the record fails to reveal a genuine factual dispute and the moving party was entitled to judgment as a matter of law, the trial court's grant of summary judgment must be affirmed."[5] "A resolution of the question of whether a plaintiff can assert a claim for NIED is essentially an inquiry into

---

[3]     Under AS 13.16.475(a), a personal representative of an estate can respond to a notice of a claim against the estate by disallowing it.

[4]     *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 346 (Alaska 2014).

[5]     *Id.*

whether the defendant should reasonably foresee the injury to the plaintiff and thus owes the plaintiff a duty of care."[6]  The scope and existence of a duty of care are questions of law, which we review de novo.[7]

## IV.   DISCUSSION

Alaska law permits individuals to recover damages on the basis of emotional distress under limited circumstances.[8]  As a general rule, damages are not awarded in the absence of a physical injury.[9]  We have established two exceptions to this general rule:  (1) the bystander exception and (2) the preexisting duty exception.[10]  We consider the applicability of each exception to the Schacks' NIED claim; we then consider whether this case warrants establishing a new theory of NIED liability.  We conclude that neither exception applies, and an expansion of NIED liability is not warranted.

### A.    The Bystander Exception Does Not Apply Under Existing Alaska Law.

The bystander exception allows certain bystanders to recover damages for emotional distress caused by witnessing physical injury to another.[11]  We first recognized

---

[6]     *Beck v. State, Dep't of Transp. & Pub. Facilities*, 837 P.2d 105, 109 (Alaska 1992).

[7]     *Sowinski v. Walker*, 198 P.3d 1134, 1145 (Alaska 2008).

[8]     *Kallstrom v. United States*, 43 P.3d 162, 165 (Alaska 2002).

[9]     *Id.*

[10]    *Id.* at 165-66.

[11]    *Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1043 (Alaska 1986).

the bystander exception in *Tommy's Elbow Room, Inc. v. Kavorkian.*[12] In doing so, we adopted the reasoning of the California Supreme Court in *Dillon v. Legg*,[13] which held that proof of the following elements establishes a prima facie case of bystander liability: (1) the plaintiff was "near the scene of the accident"; (2) the plaintiff's shock resulted "from the sensory and contemporaneous observance of the accident"; and (3) a close relationship existed between the plaintiff and the injured individual.[14] In *Tommy's Elbow Room* we relaxed the second element to require only that it be *reasonably foreseeable* that the plaintiff would suffer emotional harm as a result of the accident, rather than requiring that the plaintiff contemporaneously observed the accident.[15]

The Schacks' NIED claim presents the novel question whether recovery is permitted when the injured relative and the tortfeasor are the same person. Neither party cites a case, from this court or any other jurisdiction, that has directly addressed this precise question. The parties have stipulated that the Schacks otherwise satisfy the elements of NIED under Alaska law: they were near the scene of the accident and rushed to it, where they were shocked to witness Elizabeth, their daughter and sister, severely wounded and fighting for her life.

The California Supreme Court's opinion in *Dillon* (whose reasoning we adopted in *Tommy's Elbow Room*) contains language suggesting that recovery on an NIED claim is not permitted when the plaintiff's injured relative causes the accident. In *Dillon*, a mother and daughter who witnessed a car strike and kill their infant daughter

---

[12] *Id.*

[13] 441 P.2d 912 (Cal. 1968); *see Tommy's Elbow Room, Inc.*, 727 P.2d at 1041-43.

[14] *Dillon*, 441 P.2d at 920.

[15] 727 P.2d at 1043.

and sister sued the car's driver.[16] The *Dillon* court held that the mother and daughter had alleged a prima facie NIED claim because the driver could have reasonably foreseen that his conduct would cause them emotional distress.[17] However, the court also noted that the driver had raised a defense of contributory negligence by the plaintiffs and the victim infant.[18] It explained that if, on remand, this defense was sustained and the driver ultimately found not liable by virtue of the mother, sister, *or infant's* negligence, "the mother [and] sister should [not] recover for the emotional trauma which they allegedly suffered."[19] This statement indicates that, if the victim contributed to the harm caused to the NIED claimants, there can be no NIED recovery.

Another California case in the *Dillon* line of cases underscores this point. In *Thing v. La Chusa* the California Supreme Court explained why not all individuals who experience emotional distress can bring an NIED claim.[20] It reasoned that emotional distress was "an unavoidable aspect of the 'human condition' " and the "overwhelming majority" of this distress was not compensable.[21] For instance, "[c]lose relatives who witness the accidental injury or death of a loved one and suffer emotional trauma may not recover when the loved one's conduct was the cause of that emotional trauma."[22]

---

[16] 441 P.2d at 914.

[17] *Id.* at 921.

[18] *Id.* at 916.

[19] *Id.*

[20] 771 P.2d 814, 829 (Cal. 1989).

[21] *Id.*

[22] *Id.*

These statements, although dicta, suggest that *Dillon* and its progeny did not establish that relatives of a tortfeasor can recover for NIED, even if the tortfeasor was also injured.

We have similarly suggested in dicta, citing the *Dillon* line of cases, that the bystander exception does not permit recovery when the tortfeasor and injured relative are the same. We described the bystander exception as applying only when "emotional distress [is] caused by the negligent conduct of a defendant *with whom the plaintiff had no preexisting relationship*."[23] This limitation would seemingly preclude recovery when the defendant, i.e., the tortfeasor, and the injured relative are the same person. In such a case, the plaintiff obviously has a preexisting relationship with the defendant.

Furthermore, the Third Restatement of Torts emphasizes these indications that NIED recovery is not applicable under the circumstances of this case. The Restatement formulates the bystander exception as applying when "[a]n actor . . . negligently causes sudden serious bodily injury *to a third person*."[24] Such a third person is missing when the negligent actor is the same person as the injured victim. In sum, this guidance uniformly indicates that the bystander exception established in *Dillon*, and adopted by this court in *Tommy's Elbow Room*, was never intended to permit recovery when the accident was caused by the plaintiff's injured relative.[25]

The Schacks' arguments to the contrary are unavailing. The Schacks argue that Elizabeth's dual role as tortfeasor and injured relative is "irrelevant" because their

---

[23] *Chizmar v. Mackie*, 896 P.2d 196, 204 (Alaska 1995) (emphasis in original) (quoting *Burgess v. Superior Court*, 831 P.2d 1197, 1200 (Cal. 1992)).

[24] RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 48 (AM. LAW INST. 2012) (emphasis added).

[25] We note that we are not foreclosing application of the bystander exception when one close relative of the plaintiff injures another close relative of the plaintiff. In such a case, the tortfeasor and the injured relative are not the same person.

claim otherwise satisfies the prima facie elements of an NIED claim. We disagree; this dual role is relevant, as explained above, because it affects the initial question whether the Schacks are the sort of plaintiffs meant to recover under the bystander exception. And we have previously concluded that a plaintiff failed to plead an NIED claim even when she "[came] close to so many of the relevant factors for establishing NIED in the absence of physical injury."[26] Therefore, the fact that the Schacks otherwise satisfy the elements of an NIED claim is not dispositive.

The Schacks point to *State Farm Mutual Automobile Insurance Co. v. Lawrence*,[27] which characterized a bystander's NIED claim as a direct claim rather than derivative of the injured relative's claim. They are seemingly suggesting that the viability of their NIED claim cannot depend on their relationship to Elizabeth. *Lawrence*, unlike this case, involved an insurance coverage dispute. In *Lawrence* we resolved the question whether the parents of a child severely injured by an uninsured driver could collect policy limits for the parents' dual claims for emotional distress and punitive damages arising from the accident separate from those the child collected for physical injuries.[28] We answered in the affirmative, in part because we rejected the insurer's attempts to equate the parents' NIED claim with one for loss of consortium.[29] We distinguished the two types of claims, explaining that "[u]nlike claims for loss of consortium, claims for emotional distress concern injuries that the claimants have

---

[26]    *Kallstrom v. United States*, 43 P.3d 162, 168 (Alaska 2002).

[27]    26 P.3d 1074 (Alaska 2001); *see also State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 1002 (Alaska 2008) (holding that parents who witnessed their fatally wounded child were not injured "in the same accident" as the child but rather "were injured as a result of the death of their daughter in an accident").

[28]    26 P.3d at 1079.

[29]    *Id.*

suffered directly, rather than derivative injuries that resulted from an injury to another."[30] We decline to extend this dicta beyond the context of parsing injuries for the purposes of determining insurance coverage.

In sum, we conclude that the Schacks have not stated a valid NIED claim under existing Alaska law because there is no indication that recovery was intended when the tortfeasor and injured relative are the same individual.[31]

B.    The *D.S.W.* Factors Do Not Support Recognizing A New Duty Of Care That Would Allow Recovery.

We have stated that the bystander and preexisting duty exceptions to the physical injury requirement for NIED claims, while the only *current* exceptions, are not the only *possible* exceptions.[32]   But we will not "easily establish[]" additional exceptions.[33]  "When deciding whether a novel action for negligence can be maintained under the common law, we consider whether a duty exists."[34]  The existence of an actionable duty of care is determined using the factors outlined in *D.S.W. v. Fairbanks*

---

[30]    *Id.*

[31]    The Schacks also allude to the other exception to the physical injury requirement for NIED claims — the preexisting duty exception — although their argument on this point is not clear.  To the extent they argue that this exception permits recovery, this claim fails.  For this exception to apply, the defendant must have had a fiduciary or contractual relationship with the plaintiff.  *Kallstrom*, 43 P.3d at 166.  The Schacks do not allege they had either such relationship with Elizabeth.  We therefore conclude that the preexisting duty exception does not apply.

[32]    *Id.* at 165-67.

[33]    *Id*. at 166.  NIED claims must be constrained because they are too easy to feign and are likely to involve injuries so minimal that tasking courts with adjudicating fault would be unduly burdensome.  *Chizmar v. Mackie*, 896 P.2d 196, 201 (Alaska 1995) (citing *Payton v. Abbott Labs*, 437 N.E.2d 171, 178-79 (Mass. 1982)).

[34]    *Kallstrom*, 43 P.3d at 167.

*North Star Borough School District*.[35] Although the Schacks explicitly discuss these factors in their briefing, at oral argument their counsel appeared to deny that they were asking us to establish a new tort. Regardless, the *D.S.W.* factors do not support recognizing a novel duty of care in this case.

*D.S.W.* outlines seven factors we consider in determining whether a plaintiff's claim presents an actionable duty of care:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.[36]

We consider each factor in turn.

Starting with factor one, the foreseeability of harm to the plaintiff, both parties agree that this factor favors the Schacks, and as a general matter it seems foreseeable that family members of accident victims experience emotional distress regardless of who was at fault. However, in the context of an NIED claim, "foreseeability, standing alone, [does not] properly define[] the scope of a defendant's duty."[37] Permitting NIED recovery based on the foreseeability of the harm alone "would

---

[35]     628 P.2d 554, 555 (Alaska 1981).

[36]     *Id.* (citing *Peter W. v. S.F. Unified Sch. Dist.*, 131 Cal. Rptr. 854, 859-60 (Cal. App. 1976)).

[37]     *Chizmar*, 896 P.2d at 203; *see also Thing v. La Chusa*, 771 P.2d 814, 826 (Cal. 1989) ("[I]t is clear that foreseeability of the injury alone is not a useful 'guideline' or a meaningful restriction on the scope of the NIED action.").

create indeterminate and potentially unlimited liability," and for this reason this factor must be constrained by pragmatic and policy considerations.[38] Accordingly, we assign this factor little weight in the context of the Schacks' claim.[39]

Moving to factor two, the degree of certainty that the plaintiff suffered injury, the Schacks note that it is undisputed that they suffered injury. However as a general matter, we have characterized emotional injury as "relatively trivial" as compared to physical injury and have expressed concern that emotional distress can be "easily feigned."[40] Therefore, although the Schacks' emotional distress was undoubtedly genuine, this factor favors the Estate.

As for factor three, the closeness of the connection between the defendant's conduct and the injury suffered, the Schacks argue that it is not disputed that Elizabeth's injuries caused their shock. Similar to our factor one analysis, the connection between the injury of a relative and the family's emotional distress in general is unrelated to who was at fault. The Estate does not make an argument on this point. Therefore, this factor favors the Schacks.

Turning to factor four, the moral blame attached to the defendant's conduct, the Schacks argue that Elizabeth must be held accountable for her negligent conduct "[l]ike every other driver." However, we have previously concluded that merely

---

[38] *Philbert v. Kluser*, 385 P.3d 1038, 1042 (Or. 2016); *see also Mesiar v. Heckman*, 964 P.2d 445, 450-52 (Alaska 1998) (declining to impose a duty of care even though the harm was foreseeable, because doing so would "expose [the defendant] to litigation for almost any future management decision").

[39] *See State v. Sandsness*, 72 P.3d 299, 306-07 (Alaska 2003) (declining to impose a duty of care even though foreseeability was present because the remaining *D.S.W.* factors "strongly outweigh[ed]" the foreseeability factor).

[40] *Chizmar*, 896 P.2d at 201.

negligent conduct — especially conduct that results in only emotional, rather than physical, injury — carries little moral blameworthiness.[41]  Because the Schacks allege that they suffered only emotional injury, this factor favors the Estate.

Regarding factor five, the policy of preventing future harm, the Schacks claim that "Alaskans hearing about this incident will be more inclined to drive carefully if Elizabeth (and/or her estate) is held fully accountable for the damages she caused." However, this argument overlooks the fact that Elizabeth tragically died of traumatic injuries, and individuals are already naturally motivated to avoid traumatic injuries from any source.  It is unlikely that the threat of liability (especially post-mortem liability) will add much to the naturally high incentive to avoid seriously injuring oneself. Therefore, this factor favors the Estate.

Factor six concerns the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach.  The Schacks argue this burden is negligible beyond that already paid for by insurance.  However, instances of individuals negligently injuring or killing themselves are not limited to car accidents, and thus there is a potential for imposing

---

[41]  *See, e.g.*, *Lynden Inc. v. Walker*, 30 P.3d 609, 616 (Alaska 2001) ("As to moral blame, negligence resulting in a risk of personal injury is regarded as significantly blameworthy in ways that negligence resulting only in emotional distress or economic loss is not."); *Mesiar*, 964 P.2d at 451 ("Our cases have ascribed particular significance to the moral blameworthiness of negligence that creates a risk of death or serious personal injury; in contrast, we have ascribed little blameworthiness to ordinary negligence that merely causes economic or purely emotional harm.").

greater costs on defendants.  Given that we previously expressed reluctance to "open the judicial floodgates" to new NIED liability for very similar reasons,[42] this factor favors the Estate.

Finally, turning to factor seven, the availability, cost, and prevalence of insurance for the risk involved, the Schacks argue that Elizabeth's auto coverage insured her and her victims against this type of loss.  But this reasoning is somewhat circular because the Schacks are, in this very case, trying to prove that they are victims entitled to an insurance payout.  And the expansion of NIED that the Schacks are arguing for would not be limited to injuries caused by car accidents.  The full set of potential risks includes many that are not commonly insured.  Furthermore, in the car accident context, distributing the limited pot of insurance money to a larger pool of victims would result, in some cases, in the tortfeasor's relatives receiving money that otherwise would go to non-negligent victims or their families.  Routinely imposing intra-family liability could even lead to collusive[43] or vexatious suits.  Therefore, this factor favors the Estate.

Overall then, factors one and three favor the Schacks (although factor one is of limited significance here), and factors two, four, five, six, and seven favor the Estate.  Of the seven factors, factor six carries the most significance in this case.  Policy

---

[42]    *Hawks v. State, Dep't of Pub. Safety*, 908 P.2d 1013, 1017 (Alaska 1995); *see also D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555-56 (Alaska 1981) ("[M]uch burdensome and expensive litigation would be generated if . . . lawsuits [of the type the plaintiff was advocating] were allowed.").  The Schacks counter that the absence of previous cases matching these facts uncovered by the research of either the parties or the superior court negates the "floodgates" argument, but a lack of litigation does not necessarily indicate a lack of similar factual circumstances.  Indeed, instances of individuals negligently injuring themselves in proximity to close family members could hardly be described as a rarity.

[43]    In this case Elizabeth's father is the personal representative of the Estate and Elizabeth's mother and brother are the plaintiffs.

considerations, such as not wanting to overburden courts or dramatically expand liability for potential defendants,[44] militate strongly against allowing recovery. Therefore, and especially in light of the fact that new NIED exceptions cannot be easily established,[45] the *D.S.W.* factors do not support extending recovery to the Schacks.

## V. CONCLUSION

For the reasons explained above, we AFFIRM the superior court's grant of summary judgment in favor of the Estate.

---

[44] *Hawks*, 908 P.2d at 1017.

[45] *Kallstrom v. United States*, 43 P.3d 162, 166 (Alaska 2002).

-14-                                                              **7230**