Argued and submitted November 23, 1994, reversed and remanded in part;
otherwise affirmed March 8, 1995

Tammy HOKE,
an individual,
*Appellant,*

*v.*

THE MAY DEPARTMENT
STORES COMPANY,
a New York corporation,
dba Meier & Frank Co.,
Meier & Frank Company,
an Oregon corporation,
*Respondents,*

. *and*

Percy WINTERS,
*Defendant.*

(9302-01301; CA A83404)

891 P2d 686

Edward S. McGlone, III, argued the cause and filed the briefs for appellant.

Robert D. Bulkley, Jr., argued the cause for respondents. With him on the brief were Barrie J. Herbold and Markowitz, Herbold, Glade & Mehlhaf, P.C.

Before Riggs, Presiding Judge,* and De Muniz and Leeson, Judges.

LEESON, J.

* Riggs, P. J., *vice* Rossman, P. J., retired.

## LEESON, J.

Plaintiff appeals from the trial court's granting of summary judgment to The May Department Stores Company (defendant).[1] We write only to address plaintiff's claims of negligent supervision and retention. We review the record in the light most favorable to plaintiff to determine whether defendant established that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law, *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978), and reverse.

On February 25, 1990, plaintiff, then 15 years old, shoplifted a nightgown from the Meier & Frank department store at Lloyd Center. A customer service representative called Meier & Frank senior security agent Winters and told him to contact clerk Wiley for information about the incident. Wiley told Winters that another clerk, Miller, had followed plaintiff out of the store, because plaintiff had stolen an item of lingerie. Winters went to the store exit that Wiley described, but did not see plaintiff or Miller. Miller subsequently told Winters that he could find plaintiff sitting outside at a bus stop across the street. Winters found plaintiff and told her that clerks in the store had seen her steal an item of lingerie. Winters asked plaintiff to open her purse. When she did, Winters saw a green nightgown in the purse.

Winters told plaintiff that she must accompany him back into the store to take care of the matter and that if she did not accompany him voluntarily, he would place her in handcuffs. Plaintiff went with Winters and he took her to the security office, which was located in the "sub-basement" of the store, through a set of double doors on which a sign was posted stating that only store personnel were allowed beyond them. Once plaintiff and Winters were inside the security room, Winters closed and locked the door.

Meier & Frank's security manual provides that security officers should conduct interviews with suspects in the presence of two or more employees and should have a female employee present when a female subject is involved. Security director Verheul had previously given Winters a "very strong

---

[1] Winters is not a party to this appeal. The May Department Stores Company is a New York corporation that owns and operates Meier & Frank Company.

direction" not to interview suspects alone. Because the second security guard on duty had gone home early, Winters twice called a customer service representative and requested that a female employee come to the office to observe the interview with plaintiff. Winters also attempted to page the female store manager who was on duty at the time. When no one responded to that page, Winters again called customer service and requested that the manager be paged over the store loudspeaker. He heard the page broadcast throughout the store, but the manager never responded and no one came to the security room.

During this time, plaintiff became increasingly distraught and begged Winters not to call the police or prosecute her. Winters told her that he would have to call the police and that she would probably be sent to jail. Winters also told her that it was likely that she would be placed in a cell with another woman who would sexually abuse her. Winters then gave plaintiff the impression that if she would engage in sexual intercourse with him, he would release her without calling the police. Feeling that she was in danger or would be harmed if she refused to comply with Winters' request, plaintiff agreed. Winters turned off the lights in the security office and engaged in sexual acts, including intercourse, with plaintiff. Winters then turned on the lights, made several more telephone calls, completed some paperwork and, about 20 minutes later, released plaintiff. Plaintiff reported the incident to the police the following day. After Winters pleaded no contest to criminal charges, defendant terminated his employment.

Plaintiff's complaint alleged multiple claims for relief. In part, the complaint alleged that defendant was negligent as follows:

"THIRD CLAIM FOR RELIEF

"(Negligence of Defendant May)

"Count One — Negligent Hiring and Retention

"* * * * *

"(26)

"Defendant May was negligent in * * * retaining defendant Winters as a security guard in one or more of the following particulars:

"* * * * *

"c. In failing to adequately investigate allegations against defendant Winters that he sexually abused shoplifting suspects, and engaged in inappropriate sexual advances toward employees * * *.

"* * * * *

"d. In failing to discharge defendant Winters upon learning of his misconduct toward women, including the previous allegation of sexual abuse of a shop lifting suspect, which arose on or about July 1989.

"* * * * *

"Count Two — Negligent Supervision

"* * * * *

"(29)

"Defendant May was negligent in its supervision of defendant Winters, in one or more of the following particulars:

"a. In allowing defendant Winters to question female suspects in private without an additional person present;

"b. In failing to adequately monitor offices where suspects were interrogated;

"c. In failing to discharge defendant Winters where a reasonable basis existed to believe that he represented a potential threat to members of the public;

"d. In failing to assure security guards worked in pairs at all times, particularly when reason existed to believe that a guard may present a danger to the public, or after being informed that a guard may have attempted to use his position to coerce sexual favors;

"e. In failing to take other reasonable steps to protect the public from abuse of power by defendant Winters * * *."

The trial court granted defendant's motion for summary judgment in its entirety and entered a judgment dismissing plaintiff's claims. We must determine whether the record on summary judgment establishes any issue of genuine fact with respect to plaintiff's claims.

■ As a preliminary matter, we consider the duty owed by defendant to plaintiff. Relying on *Buchler v. Oregon Corrections Div.*, 316 Or 499, 505, 853 P2d 798 (1993), plaintiff contends that "where a special relationship exists between

the defendant and the plaintiff, there is a duty to protect the plaintiff from injury by third parties." She observes that in *Keeland v. Yamhill County*, 24 Or App 85, 90, 545 P2d 137 (1976), we cited with approval the approach taken by section 320 of the *Restatement (Second) of Torts* (1965), which provides:

> "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor
>
> "(a) knows or has reason to know that he has the ability to control the conduct of the third persons, and
>
> "(b) knows or should know of the necessity and opportunity for exercising such control."

Plaintiff argues that section 320 applies, because defendant took plaintiff into custody and should have acted reasonably to protect her against Winters. Defendant responds that plaintiff was a trespasser or a licensee and that it, therefore, cannot be liable to her for any negligence in hiring, retaining or supervising Winters, because its only duty to her was to avoid injuring her wilfully or wantonly.

▮▮▮ Defendant's argument that plaintiff was a trespasser or licensee is without merit. Winters told plaintiff that she *must* return to the store and that he would place her in handcuffs if she did not return voluntarily. We are likewise not persuaded by plaintiff's argument that section 320 of the *Restatement* is applicable in this situation. Section 320 describes defendant's duty to exercise reasonable care to protect plaintiff from "third persons," not from defendant's own agents or employees.[2] Our conclusion that section 320 is

---

[2] By contrast, *Restatement (Second) of Torts*, section 317, provides:

"A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

"(a) the servant

"(i) is upon the premises in possession of the master or upon which the

not applicable here, however, does not mean that defendant may not be liable to plaintiff. Defendant's liability depends on whether defendant unreasonably created the risk of harm that befell plaintiff. *Buchler v. Oregon Corrections Div., supra*, 316 Or at 511. In making that determination:

> " 'The jury is given a wide leeway in deciding whether the conduct in question falls above or below the standard of reasonable conduct deemed to have been set by the community. The court intervenes only when it can say that the actor's conduct clearly meets the standard or clearly falls below it.' " *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17-18, 734 P2d 1326 (1987) (quoting *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 607, 469 P2d 783 (1970)).

Unless "no reasonable factfinder could find the risk foreseeable or defendant's conduct to have fallen below acceptable standards," *Donaca v. Curry Co.*, 303 Or 30, 38-39, 734 P2d 1339 (1987), the grant of summary judgment was improper.

Plaintiff argues that defendant was negligent in its retention and supervision of Winters. She maintains that the harm that befell her was reasonably foreseeable, and that, in fact, defendant foresaw it. Defendant argues that it cannot be liable to plaintiff under a theory of negligent supervision or negligent retention, because it had no reason to know that Winters had dangerous propensities. Defendant claims that the prior complaint against Winters was unfounded and that plaintiff offers no other evidence to support a finding that defendant knew, or should have known, of Winters' previous misconduct. Defendant further argues that plaintiff failed to offer any evidence that defendant acted unreasonably in the way in which it handled the prior allegation of misconduct.

We first address plaintiff's claim that defendant's retention of Winters as a security guard was negligent. Evidence in the record shows that, in 1989, Winters had been

---

servant is privileged to enter only as his servant, or

"(ii) is using a chattel of the master, and

"(b) the master

"(i) knows or has reason to know that he has the ability to control his servant, and

"(ii) knows or should know of the necessity and opportunity for exercising such control."

Plaintiff does not rely on this section.

accused of sexually abusing another female juvenile shoplifting suspect. That incident allegedly occurred while another security guard was questioning a second suspect in an adjacent room. The juvenile told police that Winters had put his hands down her pants and "French kissed" her. In a deposition taken in preparation for plaintiff's case, plaintiff asked security director Verheul about the investigation of that complaint. Verheul was asked if the store followed a standard procedure when a security guard was accused of misconduct. Verheul responded, "I don't know if there is a process exactly * * *." She also stated that "each instance would be different, and I would simply have to take every lead I could and look into it as much as I could * * *."

Verheul's investigation of the prior allegation of abuse consisted of talking to Winters, who denied the charges, and to the detective who investigated the charges. The detective informed her that Winters had taken two polygraph tests, that the first was inconclusive and that Winters had passed the second.[3] Verheul conducted no independent investigation, did not interview the complainant and did not obtain a copy of the police report.

Verheul explained that she did not investigate the prior allegation more fully because she had concluded that Winters was "never alone" with the complainant; "there was a second agent always present." She later stated that Winters and the other security guard "would not have been exactly in the same room" and that they were "in adjoining offices," separated by "a partial wall and a door." She did know of a subsequent conversation with Winters. Verheul stated that that conversation "was a very strong direction that to avoid an allegation of this nature, he must ensure that he has a second witness present and preferably a female witness with female suspects." Soon after the prior allegation, Verheul recommended that Winters be promoted to the position of senior security agent.

Defendant maintains that, because Winters passed the second polygraph test and because the detective who investigated the prior allegation decided not to pursue

---

[3] The detective then terminated the police investigation, concluding that the police "did not have evidence that [the abuse] had occurred."

charges, it is entitled to a determination, as a matter of law, that it acted reasonably. Plaintiff contends that whether defendant adequately investigated the prior allegation is a question of fact. She contends that, based on Verheul's deposition and expert testimony about standards in the security industry, a finder of fact could find that defendant did not act reasonably in investigating that allegation. Plaintiff submitted an affidavit to the trial court stating that she would call an expert who would provide testimony "sufficient to create an issue of fact on the allegations of plaintiff's complaint."[4] ORCP 47E provides, in part:

> "If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit of *the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact,* will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion." (Emphasis supplied.)

■■ We cannot say, as a matter of law, that defendant's conduct in investigating the prior complaint clearly meets the standard of reasonableness. We agree with plaintiff that whether defendant's conduct in investigating the prior complaint and retaining Winters was reasonable is a question of fact and that there are material issues of fact that preclude summary judgment on the claim for negligent retention.

■ We next turn to plaintiff's contention that the trial court erred in granting summary judgment to defendant on her claim of negligent supervision. Her complaint focuses on the facts that Winters was allowed to question plaintiff without an additional person present, that the security office was

---

[4] The trial court stated that it did not believe that was an area subject to expert opinion. We disagree. OEC 702 provides:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Plaintiff argues that the expert's testimony would address both "the reasonableness of defendant's investigation of the prior complaint and the question of whether the complaint and its subsequent investigation provided a basis for action." The security industry is specialized, and an expert in that field could supply knowledge that would prove helpful to a jury in judging the reasonableness of defendant's conduct.

not monitored, and that Winters was not working with another security guard. She contends that defendant acted negligently in supervising Winters by failing to enforce its own security policies and by failing to facilitate employee compliance with those policies. Defendant responds that, because it did not have reason to know of Winters' dangerous propensities, it cannot be liable on this claim.

Defendant's security manual states that a security guard should not make an arrest unless he or she has personally witnessed a theft. The manual also states that if a subject is stopped and questioned, the subject should be taken "as quickly and as quietly as possible" to the security office for questioning. It further states that during the interrogation of suspects, "[g]enerally there should be two but no more than two representatives of the store participating" and that the "other store representative present should be a security agent, a female agent when a female subject is involved." These provisions indicate that defendant knew that its security guards would take suspects into custody, and that, for their mutual protection, a second person should be present during an interview. Verheul testified, in deposition, about defendant's policy regarding the questioning of suspects:

"Q. Now, after the suspect has been brought to the security office, is there a policy at Meier & Frank as to how many people should be present in that room?

"A. There is a preference that there is a second representative from our company present.

"Q. But that's not a strict policy, I take it, from the way you've answered that?

"A. It is a well-ingrained practice that is rarely, if ever, violated.

"* * * * *

"Q. Do you always have your security agents acting in teams?

"A. No.

"Q. Do you always make sure that there is [sic] at least two security agents working a store at the same time?

"A. No.

"Q. Are there times that you schedule just a single agent working to be in a store?

"A. Yes.

"Q. And how is this policy met under those circumstances where there is just a single agent working the store?

"A. To obtain a second witness to the interview, the agent would immediately call for an executive on duty to respond to the office or find someone to come into the office with us.

"Q. Could someone be pulled off the floor to do that?

"A. Yes, they could."

Verheul also testified that, in the light of the prior complaint against Winters for sexual abuse, Winters had been given "very strong direction" to ensure that he had a second witness—preferably a female—present whenever he interviewed female suspects. The evidence, viewed in the light most favorable to plaintiff, is that Winters made several attempts to have a second person present during his interview with plaintiff, that several of defendant's employees knew that Winters had plaintiff in custody and that he had requested that someone else come to the security office for the interview, and that no one responded. When plaintiff questioned Verheul about the incident involving plaintiff, she admitted that she had made no attempt to question any of the other employees that Winters allegedly contacted and, therefore, did not know if Winters had complied with store policy. She also testified that other aspects of plaintiff's case were troubling:

"*Had I been aware of the case*, I would have had very serious concerns over the detention of [plaintiff] in the first place, number one. It is not our practice to detain persons suspected of theft unless we have observed the crime ourselves. So, that would have concerned me.

"In reviewing the case, *had I known that he was alone with no second witness*, that would have concerned me. Had I known that she was someone that we'd had a prior arrest with and he failed to realize that they were the same person, that would have concerned me. Had I known it was a juvenile, *although I don't know that I would have known that*, versus an adult, and he released her without contacting a parent or the police, that would have been cause for concern.

"So, in retrospect, had I known all these things, this case would have raised a lot of red flags, even, you know, without the allegation [of sexual abuse]." (Emphasis supplied.)

In sum, there is evidence in the record from which a jury could find that defendant failed to ensure that its employees complied with its security policies and that it was reasonably foreseeable under the circumstances that the harm that befell plaintiff would occur. *Buchler v. Oregon Corrections Div., supra*, 316 Or at 516. The trial court erred in granting summary judgment to defendant on her negligent supervision claim.

Judgment on claims for negligent retention and negligent supervision reversed and remanded; otherwise affirmed.