Argued and submitted November 30, 2021, reversed and remanded
January 26, 2022

I. K.,
an individual proceeding
under a fictitious name,
*Plaintiff-Appellant,*

*v.*

BANANA REPUBLIC, LLC,
dba Banana Republic #1557,
a foreign limited liability corporation;
and Teri Turner, an individual,
*Defendants-Respondents,*

*and*

Johnny Tuck Chee CHAN,
an individual,
*Defendant.*

Multnomah County Circuit Court
19CV13456; A173330 (Control)

C. K.,
an individual proceeding
under a fictitious name,
*Plaintiff-Appellant,*

*v.*

BANANA REPUBLIC, LLC,
dba Banana Republic #1557,
a foreign limited liability company,
*Defendant-Respondent,*

*and*

Teri TURNER,
an individual et al,
*Defendants.*

Multnomah County Circuit Court
19CV24102; A174072

505 P3d 1078

In these consolidated civil appeals, plaintiffs assign error to the courts' rulings dismissing their claims against their employer and a manager for negligent infliction of emotional distress. Defendant hired an employee, Chan, who had

been discharged from his previous employer for surreptitiously video recording other employees while they were using the restroom. Chan also video recorded employees at defendant's store location in Portland. The trial courts in each case dismissed plaintiffs' claims because they did not allege a violation of a legally protected right. *Held*: Under Oregon's three-part framework for analyzing a claim for negligent infliction of emotional distress, plaintiffs adequately pleaded facts, which, if true, would give rise to liability by defendant. First, the right to privacy includes a right to be free from being secretly video recorded in an employee restroom. An employer has a duty to protect that right to privacy when the employer knows or has reason to know that someone will likely attempt to place a video recording device in a restroom yet fails to take steps to prevent it. Second, a person's interest in being free from secret recordings in an employee restroom is of sufficient importance to warrant protection. Finally, provided Chan's history of making similar secret recordings at a previous place of employment, it was foreseeable that the same behavior would continue at his new workplace.

Reversed and remanded.

Angel Lopez, Judge. (Limited Judgment entered January 8, 2020) (A173330)

Kathleen M. Dailey, Judge. (Limited Judgment entered May 14, 2020) (A174072)

Barbara C. Long argued the cause for appellant I. K. Also on the briefs was Vogt & Long PC.

Rebecca Cambreleng argued the cause for appellant C. K. Also on the briefs was Crispin Marton Cambreleng.

John A. Berg argued the cause for respondents. Also on the brief were Heather N. St. Clair and Littler Mendelson, P.C.

Ashley L. Vaughn filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Before Kamins, Presiding Judge, and Lagesen, Chief Judge, and Landau, Senior Judge.

LANDAU, S. J.

Reversed and remanded.

## LANDAU, S. J.

In these consolidated cases, plaintiffs allege that they suffered serious emotional trauma from having been video recorded at work while using a private employee restroom. The recording was done by a fellow employee whom plaintiffs allege their employer and one of its managers should have known would do such things had they not been negligent in their hiring and retention practices. The trial courts in both cases dismissed the complaints under ORCP 21 A(8) for failure to state a claim. The courts reasoned that, under Oregon law, there can be no recovery for negligent infliction of emotional distress in the absence of physical impact or the violation of a legally protected right independent of the interest in being free from another's negligence, and here the complaints pleaded neither physical impact nor the violation of a cognizable legally protected right.

We conclude that the trial courts erred. Accepting the allegations of the complaints as true, defendants' negligence resulted in a violation of plaintiffs' legally protected interest in their privacy—specifically an employee's right not to be video recorded while using what is supposed to be a private employee restroom. We therefore reverse and remand.

## I.   FACTS

On review of a decision to dismiss under ORCP 21 A(8), we accept as true the facts alleged in the complaint and draw all reasonable inferences from those allegations in plaintiffs' favor. *McLaughlin v. Wilson*, 365 Or 535, 537, 449 P3d 492 (2019).

Defendant Johnny Tuck Chee Chan was a licensed pharmacist who worked at a Kaiser Permanente pharmacy. During his employment there, he secretly video recorded other employees using the store's restroom. In November 2017, Kaiser discovered Chan's secret recording and fired him. Police commenced an investigation of Chan, as did the Oregon Board of Pharmacy.

In the meantime, in May 2018, defendant Banana Republic's general manager, Teri Turner, hired Chan to

work as a sales associate at its Cascade Station store. Chan once again secretly placed a camera in the store's employee restroom and recorded employees in a state of undress while using the restroom.

In November 2018, after a year-long investigation, police arrested Chan in connection with his recording of more than 50 people at the Kaiser pharmacy restroom. A few weeks later, Chan was charged with recording 27 Banana Republic employees as well.

Plaintiff I. K., an 18-year-old Banana Republic employee working at the Cascade Station store, was among those whom Chan secretly recorded. When she learned that Chan had secretly recorded her using the restroom, she experienced significant mental and emotional pain and suffering. Plaintiff C. K., another Banana Republic employee, learned that she, too, had been recorded while using the restroom and experienced significant mental and emotional pain and suffering.

In addition to suing Chan, I. K. initiated an action for negligence against Banana Republic and Turner. She alleged that defendants were negligent in hiring and retaining Chan because they should have known that he had been fired from Kaiser for secretly recording employees using the restroom. C. K. initiated a separate action against defendants for negligent hiring and retention on the same grounds, also alleging that she suffered significant mental and emotional pain and suffering.

In both cases, defendants moved to dismiss the negligent hiring and retention claims under ORCP 21 A(8) for failure to state a claim. They argued that Oregon law does not recognize a claim for negligent infliction of emotional distress in the absence of allegations of physical impact or an applicable exception to the physical impact requirement. In neither complaint, they argued, is there an allegation of physical impact. Moreover, defendants argued, no exception to the physical impact rule applies. Plaintiffs argued that, in fact, their cases are subject to a recognized exception to that general rule. In this case, they argued, invasion of privacy is a crime, and the persons in charge of the premises where plaintiffs worked were responsible—apart from

the duty to avoid foreseeable risks of harm—for protecting against such crimes. In both cases, the trial courts agreed with defendants and entered a limited judgment dismissing the claim.

On appeal, plaintiffs argue that the trial courts erred in dismissing their claims for emotional distress caused by defendants' negligent hiring and retention. According to plaintiffs, even if a person has not been physically harmed, that person may recover damages for emotional distress when the defendant's conduct violates an independent legally protected interest. Plaintiffs acknowledge that, to date, the Oregon appellate courts have not directly ruled on the question whether there is such an independent interest in the circumstances of these cases. Plaintiffs nevertheless contend that we "should recognize a legally protected interest in being free from the serious emotional distress caused by negligent invasions of the right not to be secretly video recorded while using a private restroom at work." They argue that such an interest is inherent in case law recognizing a common-law right to privacy as well as statutes making it a crime to video record a person in a state of undress in any place where the person has a reasonable expectation of privacy and authorizing a civil action for damages for the same conduct. They further contend that, because there are few places where a person has a greater expectation of privacy than a restroom, the violation of that privacy warrants protection from any emotional distress that results.

Defendants argue that the trial court did not err in dismissing plaintiffs' claims. They do not contest that negligent hiring and supervision may give rise to a claim for damages generally. They assert only that such negligent hiring and supervision does not, as a matter of law, give rise to a claim for damages for emotional distress.

## II.  ANALYSIS

In reviewing the trial courts' decision to dismiss plaintiffs' claims, our task is to determine whether, viewing the allegations of the complaint in the light most favorable to plaintiffs, they have failed to state a claim as a matter of law. *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 72, 490 P3d 166 (2021).

Under Oregon law, a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact. *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-61, 652 P2d 318 (1982). There is an exception to that general rule when the defendant violated a "legally protected interest" independent of the plaintiff's interest in being free from negligent conduct. *Id.* at 559. If a plaintiff establishes a negligence claim based on the violation of such an independent legally protected interest, "then, generally speaking, the pain for which recovery is allowed includes virtually any form of conscious suffering, both emotional and physical" that foreseeably resulted from the violation. *Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 452, 412 P3d 133 (2018) (internal quotation marks omitted).[1]

In *Philibert v. Kluser*, 360 Or 698, 385 P3d 1038 (2016), the Supreme Court set out the framework for determining the existence of a "legally protected interest," the violation of which may support a claim for negligent infliction of emotional distress. The court said that a "legally protected interest" is "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Id.* at 704. The court added that not just any legally protected interest will suffice to support a claim for negligent infliction of emotional distress. The interest must be "of sufficient

---

[1] The parties skirmish over whether there is actually a general rule that is subject to exceptions. Plaintiffs argue that there is no physical impact rule with an exception, only a rule that "emotional damages may be recovered in cases where a legally protected interest is negligently invaded." According to plaintiffs, there is always a legally protected interest in being free from physical injury, and the law may recognize other legally protected interests as well. Defendants take a different view, identifying a general rule (which they denominate "the Rule") and an exception for violation of another legally protected interest (which they denominate "the Exception"). There does not appear to be any legal significance to characterizing the law one way or the other. Some cases use one phrasing. *See, e.g.*, *Paul v. Providence Health System-Oregon*, 237 Or App 584, 599, 240 P3d 1110 (2010), *aff'd on other grounds*, 351 Or 587, 273 P3d 106 (2012) (referring to "the exception to the requirement that there be evidence of concomitant physical injury in order to recover for psychological distress"). Other cases use different phrasing. *See, e.g.*, *Tomlinson*, 362 Or at 452 ("if the plaintiff establishes a negligence claim based on physical injury or the invasion of some other legally protected interest"). Most cases appear to use the "exception" phrasing, and we have done likewise.

importance as a matter of public policy to merit protection from emotional impact." *Philibert*, 360 Or at 705. As an example, the court explained that, while the law recognizes a right of privacy, the invasion of that right will not always support a claim for emotional distress, "because the nature and context of the invasion influences the extent to which privacy is legally protected and can be the basis for a successful emotional distress claim." *Id*. In addition, the court explained, the emotional distress must have been a foreseeable result of violation of the legally protected interest. *Id*.

The analysis of a claim for negligent infliction of emotional distress thus proceeds in three steps: First, we must determine whether the complaint alleges the violation of a legally protected interest. Second, we must determine whether such interest is of sufficient importance as a matter of public policy to merit protection from emotional impact. And third, we must determine whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest.

A.   *The Existence of a Legally Protected Interest*

We begin with the question whether plaintiffs have alleged a violation of a legally protected interest independent of a person's interest in being free from the consequences of another's negligence. In *Philibert*, the Supreme Court explained that a legally protected interest may derive from a number of different sources. First, the court noted that a trial court order may create a legally protected interest, and the violation of that order may be the basis for an emotional distress claim if such distress is the foreseeable result. *Id*. (citing *McEvoy v. Helikson*, 277 Or 781, 562 P2d 540 (1977)). Second, the court observed that a legally protected interest may be reflected in a statute "designed to protect the plaintiff from the type of emotional harm that occurred." *Philibert*, 360 Or at 705-06 (citing *Nearing v. Weaver*, 295 Or 702, 708, 670 P2d 137 (1983)). Third, the court explained that courts, in the exercise of their common-law authority, may recognize the existence of a legally protected interest apart from the interest in avoiding foreseeable risk of harm. *Philibert*, 360 Or at 706.

At issue in *Philibert* was whether two brothers could maintain a claim for negligent infliction of emotional distress against a negligent motorist who drove through a crosswalk and killed their younger brother in front of them. After describing the foregoing framework of analysis, the court reviewed its prior decisions allowing emotional distress claims in other circumstances, including when a person negligently handled a spouse's remains and when a person falsely used another's identity in opposing legislation. *Id*. at 707 (citing *Hovis v. City of Burns*, 243 Or 607, 613, 415 P2d 29 (1966), and *Hinish v. Meier & Frank Co.*, 166 Or 482, 503-04, 113 P2d 438 (1941)). The court concluded that witnessing a family member die was similarly traumatic and deserving of legal protection. In fact, the court suggested that the impact of witnessing such an occurrence "might be described as the emotional equivalent of a physical injury." *Id*. Under the circumstances, the court had "no difficulty concluding that plaintiffs have alleged the violation of a legally protected common law interest to be free from the kind of emotional distress injury caused by defendant's negligence here." *Id*. at 708.

Whether an individual similarly has a legally protected interest in being free from the negligently caused emotional trauma of being video recorded while using a private restroom is an issue of first impression under the law of this state.[2] Following the analysis set out in *Philibert*,

---

[2] In fact, it appears to be a novel issue under the law of nearly every other state, as well. We are aware of two New York decisions on the matter, both of which recognize a claim for negligently caused emotional distress resulting from having been recorded while using a restroom or shower facility. In *Dana v. Oak Park Marina, Inc.*, 660 NYS 2d 906, 230 AD 2d 204 (NY App Div 1997), the Appellate Division of the New York Supreme Court upheld a claim for negligent infliction of emotional distress against a marina that had failed to take steps to prevent the installation of cameras in restrooms and shower facilities. The court relied on a statute that prohibited knowingly installing such cameras. *Id*. at 909. Similarly, in *Topor v. New York*, 671 NYS 2d 584, 176 Misc 2d 177 (NY Ct Cl 1997), the plaintiff had been secretly observed through a peephole while showering in a state park shower facility. The New York Court of Claims upheld a claim for resulting emotional distress based on the same statute. The court acknowledged that, strictly speaking, the statute only prohibited a "knowing" violation. It nevertheless concluded that the statute reflected an underlying right to be free of the emotional trauma of being secretly observed while showering. Even if the state did not know of the existence of the peephole, the court explained, it should have known of it, and its failure to correct the problem supported a claim for negligent infliction of emotional distress. *Id*. at 181-82.

however, we conclude that, as a matter of common law, plaintiffs have such a legally protected interest in being free from the emotional distress of being secretly video recorded while using a private employee restroom.

It is well established that the common law recognizes the existence of a right to privacy, as well as the right to recover damages for infliction of emotional distress based on at least some violations of that right. In *Hinish*, a department store and the manager of its optical department signed the plaintiff's name to a telegram addressed to the governor urging the governor to veto a bill that, if enacted, would have prevented the store from engaging in the business of fitting and selling glasses to the public. The plaintiff did not know of the telegram and had not given the defendants permission to use his name in the telegram. In fact, the plaintiff was a federal government employee and was prohibited by law from engaging in such political activity, and violating that law could have jeopardized his employment and retirement benefits. The plaintiff initiated a claim against the defendants for the violation of his right to privacy, alleging damages for the emotional distress that resulted. The court not only recognized a common-law right to privacy, but also declared that the plaintiff was entitled to damages for the emotional distress resulting from the defendants' violation of that right: "[I]t is well settled that where the wrongful act constitutes an infringement of a legal right, mental suffering may be recovered for, if it is the direct, proximate and natural result of the wrongful act. Violation of the right of privacy is a wrong of that character." 166 Or at 506.

As the Supreme Court noted in *Philibert*, not all violations of the common-law right to privacy will support a claim for emotional distress damages, because "the nature and context of the invasion influences the extent to which privacy is legally protected and can be the basis for a successful emotional distress claim." 360 Or at 705. Here, the nature and context of the invasion of plaintiffs' privacy are compelling. As we commented in *Sterling v. Cupp*, 44 Or App 755, 761, 607 P2d 206 (1980), *aff'd as modified*, 290 Or 611, 625 P2d 123 (1981), "the final bastion of privacy is to be found in the area of human procreation and excretion and the nudity which may accompany them. If a person

is entitled to any shred of privacy," we said, "then it is to privacy as to these matters." This would seem to be especially so in the case of a restroom supplied by an employer for the private use of employees. We conclude that it entails no great stretch in the law first recognized in *Hinish* to say that, when an employer knows or has reason to know that an employee in the past has placed a video recording device in the employee restroom, employees have a legally protected interest in being free from the emotional trauma of being secretly recorded as a result of the employer taking no steps to prevent it from continuing to occur. In fact, as the court observed of the emotional trauma at issue in *Philibert*, it may likewise be said here that the shock of finding that one has been secretly video recorded under those circumstances "might be described as the emotional equivalent of a physical injury." 360 Or at 707.

In reaching the conclusion that the common law recognizes such a right, we note that case law arising under the search and seizure guarantee of Article I, section 9, of the Oregon Constitution has repeatedly recognized a right to privacy in the use of restrooms. *See, e.g.*, *State v. Holiday*, 258 Or App 601, 606, 310 P3d 1149 (2013) ("a restroom is a place where a person has a protected privacy interest"); *State v. Owczarzak*, 94 Or App 500, 503-04, 766 P2d 399 (1988) (surveillance of defendant's conduct in public restroom violated defendant's right to privacy because "[a] restroom is a place that, by its very nature, excludes unlimited observation"); *State v. Casconi*, 94 Or App 457, 766 P2d 397 (1988) (video surveillance of public restroom violates Article I, section 9, privacy rights).

A similar right of privacy is reflected in state statutes. ORS 163.701(1) provides that a person commits the crime of invasion of personal privacy in the first degree if the person "knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the other person" and the person being recorded "is in a place and circumstances where the person has a reasonable expectation of personal privacy." In addition, ORS 30.831(1) provides that a plaintiff "has a cause of action for invasion of personal privacy" if the plaintiff can establish that the defendant

"knowingly made or recorded a photograph, motion picture, videotape or other visual recording of the plaintiff in a state of nudity without the consent of the plaintiff, and at the time the visual recording was made or recorded the plaintiff was in a place and circumstances where the plaintiff had a reasonable expectation of personal privacy."

Strictly speaking, those statutes apply to "knowing" conduct by the person making the recording and do not address negligent conduct by others. The fact remains that the manifest purpose of the statutes is to protect individuals from the emotional trauma of being secretly recorded in a state of nudity without their consent in places such as restrooms. And while the remedies of those statutes themselves may be triggered by only knowing conduct by the person doing the recording, the statutes implicitly reflect an underlying legally protected interest in being free from emotional trauma from the type of secret recording that plaintiffs allege occurred in this case.

In noting those constitutional and statutory provisions, we do not hold that they are a direct source of plaintiffs' legally protected interest in this case. Given our conclusion that such an interest exists as a matter of common law, we need not address that question. But those provisions do show that the right that we conclude exists as a matter of common law is akin to a right widely reflected in the laws of this state.

Defendants argue that, in the context of determining whether a claim may be maintained for negligent infliction of emotional distress, what is relevant is the duty of the defendant, not the nature of the underlying interest that a plaintiff may possess. Defendants certainly are correct that, in at least some cases, the courts refer to a legally protected interest in terms of a specific duty of the defendant. *See, e.g.*, *Curtis v. MRI Imaging Services II*, 327 Or 9, 16, 956 P2d 960 (1998) ("duty to [the] plaintiff to identify and guard against predictable psychological reactions or consequences *** to the MRI procedure"). Others, however, refer to the nature of the right, not the duty. *See, e.g.*, *Philibert*, 360 Or at 707 ("the common law right of a bystander to avoid observing

the physical injury of a close family member"). It could be that the distinction is merely semantic; if a plaintiff has a legally protected interest, the defendant has a specific duty not to violate it. In any event, we reach the same conclusion regardless of how the legally protected interest in this case is characterized: If an employer provides a supposedly private restroom for employees and the employer knows or has reason to know that another employee has in the past placed a video recording device in such private restrooms, the employer may be liable for negligently failing to take steps to protect the employees' right to privacy and prevent the emotional distress that is likely to result from a violation of that right.

Defendants insist that the controlling issue is "whether the allegedly negligent defendant—not some other person or entity—held a distinct duty and was subject to an independent basis of liability." According to defendants, plaintiffs' claims fail as a matter of law because it is clear from the allegations of their complaints that it was Chan who caused their emotional distress. But in making that argument, defendants conflate two distinct issues—namely, whether on the one hand plaintiff has a legally protected right and whether on the other hand defendants or some third party violated it.

Aside from that, defendants' argument cannot be squared with relevant case law. In *Macca v. Gen. Telephone Co. of N.W.*, 262 Or 414, 495 P2d 1193 (1972), for example, the defendant telephone company negligently published as the plaintiff's telephone number one that actually belonged to a 24-hour florist, resulting in plaintiff receiving multiple calls at all hours of the night. The plaintiff brought an action for negligence against the telephone company, alleging that as a result of the many night-time calls she suffered mental anguish. *Id*. at 417-18. A jury returned a verdict for the plaintiff, and the Supreme Court affirmed, even though it was telephone calls placed by third parties that caused the plaintiff's emotional distress. The court concluded that it was sufficient that the telephone company's erroneous listing "resulted in an invasion of plaintiff's right to enjoy her property." *Id*. at 418-19.

Similarly, in *McEvoy*, the Supreme Court upheld the legal sufficiency of a complaint for legal malpractice, based on the plaintiff's lawyer failing to secure the passport of his ex-wife as required by a court order. As a result of the lawyer's negligence, the ex-wife absconded to Switzerland with the plaintiff's child. The complaint alleged that the plaintiff suffered serious emotional distress as a result of the ex-wife's actions. 277 Or at 785. The court concluded that the complaint stated a claim for such damages even though it was the ex-wife and not the defendant who had taken the child and caused the plaintiff's emotional distress, because that emotional distress was alleged to be the "direct, proximate and natural result" of the lawyer's negligence. *Id.* at 788-89.

Defendants also argue that, because the case law to date recognizes only a claim for *intentional* infliction of emotional distress resulting from a violation of the right to privacy, we cannot venture beyond those precedents. Again, we are not persuaded. No appellate decision from the courts of this state suggests—much less holds—that a negligent violation of the right to privacy may *not* support a claim for emotional distress damages. As we have noted, the issue is one of first impression. Merely because the common law to date proceeds only so far does not mean that it may never go farther. As the Supreme Court observed in *Nees v. Hocks*, 272 Or 210, 215, 536 P2d 512 (1975), in determining whether to recognize a common-law right to relief, the courts have "not felt unduly restricted by the boundaries of pre-existing common-law remedies." To the contrary, it is the responsibility of courts to "'supplement and enlarge the law as they find it, or rather they must do so from time to time, as the novelty of questions coming before them may require.'" *Hinish*, 166 Or at 504 (quoting Frederick Pollock, *The Expansion of the Common Law* 49 (1904)).

B.  *The Societal Importance of the Legally Protected Interest*

Not just any legally protected interest warrants protection against emotional distress. The interest must be of "sufficient importance as a matter of public policy." *Philibert*, 360 Or at 705; *see also Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 365, 111 P3d 762 (2005) ("Even then,

the legally protected interest so identified must be of sufficient importance to warrant the award of damages for emotional distress.”). There appears to be no clear-cut test for determining whether a given interest is of “sufficient importance.” Primarily, it appears that courts compare the interest at issue with those that the courts have found to be of sufficient importance in other cases.

In *Philibert*, for instance, the Supreme Court addressed whether bystanders who suffered serious emotional distress as a result of observing a driver negligently run over their younger brother could recover damages for that emotional distress. The court noted that it had not had occasion to address the question previously, but that it had determined in other cases that the negligent handling of a spouse’s remains was sufficiently important to support a claim for emotional distress damages. “In our view,” the court explained, “the interest in avoiding being a witness to the negligently caused traumatic injury or death of a close family member is similarly important.” 360 Or at 707.

Likewise, in *Tomlinson*, the court concluded that parents of a child born with a debilitating genetic condition as a result of medical negligence may recover damages for the emotional distress of raising such a child. The court noted that a majority of courts from other jurisdictions concluded that such an interest is sufficiently important to warrant protection from emotional distress and then stated that “we agree with the majority of courts that have addressed the issue.” 362 Or at 454.

In that regard, we find a number of prior cases instructive in determining whether the legally protected interest at issue here is of sufficient importance to warrant protection. In *Macca*, for example, the court recognized a legally protected interest in not being subjected to the mental distress resulting from the negligent, erroneous listing of a telephone number. 262 Or at 418. In *Hovis*, the court recognized a legally protected interest in being free from the emotional distress of learning that a spouse’s remains had been negligently disturbed. 243 Or at 613. And, in *Edwards v. Talent Irrigation District*, 280 Or 307, 310, 570 P2d 1169 (1997), the court upheld recovery for the emotional distress

caused by the defendant irrigation district's negligence in causing the plaintiffs' property to be flooded.

In our view, the interest in avoiding the emotional trauma from being secretly video recorded in a state of undress while using a private employee restroom is at least as societally important as being free from the distress of being awakened in the night with unwanted telephone calls, or learning of a spouse's disinterment, or worrying about the damage to property caused by flooding.

It is worth noting that defendants do not argue that any interest in being free from the emotional distress of being secretly video recorded while using a private employee restroom is of insufficient societal importance to warrant protection. Instead, they argue that "the disconnect" between them and Chan's invasion of that interest "forecloses a showing of sufficient importance." In so arguing, however, defendants once again improperly conflate determining the importance of an interest and determining whether a given defendant violated it.

Defendants do argue that recognizing the interest at issue here as an important societal interest could lead to indeterminate liability. Specifically, they contend that holding an employer liable for negligent infliction of emotional distress under these circumstances would "eviscerat[e] decades of jurisprudence carefully limiting vicarious liability for sexual misconduct in the workplace." In support, defendants cite two United States Supreme Court decisions holding that an employer is vicariously liable for an employee's conduct only when the employer knew or should have known of the employee's conduct and took no action, *Burlington Indus., Inc. v. Ellerth*, 524 US 742, 756-57, 759, 118 S Ct 2257, 141 L Ed 2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 US 775, 789-90, 118 S Ct 2275, 141 L Ed 2d 662 (1998).

The relevance of those United States Supreme Court decisions is not entirely apparent. Both decisions concern the liability of employers under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*, although the Court did rely on principles of agency law set out in the *Restatement*

*(Second) of Agency. See, e.g.*, *Burlington Indus.*, 524 US at 742-43. In any event, defendants do not explain how ruling for plaintiffs in this case would "eviscerat[e]" the rule of vicarious liability described in those cases when plaintiffs in this case allege that defendants should have known that Chan had previously been fired for secretly recording employees while they used the restroom. Finally, defendants omit any reference to existing Oregon case law that already recognizes an employer's liability for negligent hiring and retention based on the sexual misconduct of its employees. *See, e.g.*, *Hoke v. The May Department Stores Co.*, 133 Or App 410, 417-18, 891 P2d 686 (1995) (reversing summary judgment for defendant on claim that it was negligent in hiring and retaining a security guard with a history of sexual assault and who had assaulted the plaintiff customer).

Our holding in this case is limited, as *Philibert* instructs, to the "nature and context," 360 Or at 705, of the circumstances of this case—namely, an employee's legally protected interest in being free from an employer's negligence in failing to take appropriate steps to avoid employees suffering the emotional trauma of being secretly video recorded in a state of undress while using a supposedly private employee restroom. Defendants do not explain, and we do not understand, why recognizing the importance of such a narrowly prescribed legally protected interest would necessarily lead to indeterminate liability.

C. *Foreseeability*

To recover in this case, plaintiffs must establish not only the existence of an important legally protected interest but also that defendants "negligently cause[d] foreseeable, serious emotional distress." *Philibert*, 360 Or at 702. Here, plaintiffs allege that their emotional distress from having been secretly video recorded while using the employee restroom was a foreseeable result of defendants' negligent hiring and retention. Defendants respond that plaintiffs' complaint fails as a matter of law because it was not reasonably foreseeable that Chan would violate plaintiffs' right to privacy and cause their emotional distress. According to defendants, "[a]s a general rule, an individual is not negligent for failure to foresee that his conduct might involve

harm to another through the intentional tortious criminal act of another." As support for that assertion, defendants cite *Hilt v. Bernstein*, 75 Or App 502, 707 P2d 88 (1985).

In *Hilt*, however, we held that whether a defendant may be held liable in negligence for a failure to foresee the intentional tortious criminal conduct of another depends on the circumstances. *Id.* at 512. In that case, the plaintiff brought a claim of legal malpractice against her lawyer who represented her in her divorce. The defendant lawyer had prepared a property settlement agreement, which provided that the parties' house was to be refinanced, remodeled, and then sold, with the proceeds to be divided between them. The lawyer then advised the plaintiff to sign a power of attorney giving her husband the authority to borrow money, use the house as collateral, and obligate the plaintiff on the loan. The plaintiff's husband then used the power of attorney to borrow money against the house and then convert the funds to his own use. The lender foreclosed, and the plaintiff lost her interest in the house. *Id.* at 504. The defendant moved to dismiss the plaintiff's malpractice claim on the ground that it was not foreseeable that plaintiff's husband would engage in intentional criminal acts as a result of the defendant lawyer's advice. The plaintiff responded that, in light of the husband's financial distress, the foreseeability of his criminal conduct was at least a jury question. We agreed with the plaintiff, concluding that, given the husband's financial circumstances and the parties' divergent interests, a jury could find that it was foreseeable that the husband would abscond with the proceeds. *Id.* at 512.

To similar effect is the Supreme Court's decision in *McEvoy*, in which the court upheld the legal sufficiency of a complaint for legal malpractice—and damages for resulting emotional distress—based on the plaintiff's lawyer's failure to secure the passport of plaintiff's ex-wife as required by a court order. The lawyer argued that the complaint failed to state a claim as a matter of law because it was not reasonably foreseeable that the ex-wife would unlawfully take the child and cause the plaintiff's emotional distress. The court rejected the argument, concluding that, under the circumstances, "the finder of facts could *** find that this danger

was one which defendant had reason to anticipate." 277 Or at 788.

In this case, plaintiffs allege that defendants knew or should have known that Chan had been fired from Kaiser for secretly recording employees using the restroom. Accepting that allegation, as we are required to do, we cannot say that it is unforeseeable as a matter of law that Chan would engage in the same behavior in his new employment.

In short, we conclude that plaintiffs alleged all the necessary elements of a claim for negligent infliction of emotional distress. The trial courts erred in reaching a contrary conclusion and in granting defendants' motions to dismiss.

Reversed and remanded.